**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT WIKTOR,

Defendant-Appellant.

No. 96-4144

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-990)

---

Submitted on the briefs:

Scott M. Matheson, Jr., United States Attorney, Mark K. Vincent, Assistant
United States Attorney, United States Attorney's Office, Salt Lake City, Utah, for
Plaintiff-Appellee.

Edward K. Brass, Salt Lake City, Utah, for Defendant-Appellant.

---

Before **PORFILIO**, **BARRETT**, and **HENRY**, Circuit Judges.

---

**PER CURIAM.**

---

Defendant Robert Wiktor appeals his conviction for one count of maliciously damaging property and two counts of mail fraud. We affirm.[1]

## I. Background

Defendant was the general manager of Great Western Distributing, a telemarketing business owned by co-defendant Katherine Harp.[2] On June 25, 1992, an intentional fire was set in Great Western Distributing's storage room. According to firefighters, the fire caused limited damage to a telephone system and one portion of the storage room. The sprinkler head over the fire was not functioning, and the fire investigator took the head for further investigation.

In July 1992, defendant completed an insurance proof of loss with the help of employee Cummings, claiming $239,883 in property loss, $150,000 in extra business expenses, and $80,000 in lost income. Defendant claimed the fire destroyed approximately $35,000 worth of jewelry, several leather bomber jackets worth $3,330, a painting worth approximately $2,000, a copy machine, a fax machine, and approximately $135,000 in valuable sales leads. Unigard Insurance

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

[2] Co-defendant Harp's trial was severed from defendant's trial due to a conflict of interest between defendant and Harp's attorney.

Company issued several checks on this claim, including checks for clean up and continuing business expenses, for a total of $61,347.19.

In December 1992, employee Cummings contacted Unigard to inform them that defendant's claim was fraudulent. He recounted defendant's statements that he had set the fire using an alcohol-based solvent, and that he had "super-glued" the sprinkler head. After Cummings contacted the fire investigator with the same information, the sprinkler head was sent to the Bureau of Alcohol, Tobacco and Firearms, which confirmed that it had indeed been "super-glued."

At trial, Cummings testified that defendant told him he had set the fire and glued the sprinkler head. He also testified that defendant instructed him to exaggerate the losses in insurance documents, to include items that were not in the storage room at the time of the fire, and to forge several receipts allegedly showing that Great Western had purchased the sales leads claimed to have been lost. Cummings testified to defendant's statements that the fire was very opportune, that he would make a lot of money out of it, and that they had to make it look like the business would reopen to ensure payment of the insurance claim. Finally, Cummings testified that defendant and co-defendant Harp decided to claim the jewelry and bomber jackets during a phone call; that they sold the allegedly lost leads to another company; that he helped defendant remove the

undamaged copy machine and fax machine from the office; and that the painting claimed to be lost was hanging in defendant's office after the fire.

In addition, trial testimony showed the following. There was evidence that the business was in severe financial distress at the time of the fire, and that defendant had purchased a half-million dollar insurance policy twenty days earlier, expressing great urgency. An employee testified that when she checked and locked the storage room at 9:00 p.m., there was no sign of fire, and that defendant remained at the office when she left the building that evening. Several employees testified that this was very unusual. The fire investigator estimated the fire started shortly after 9:00 p.m. When firefighters arrived at approximately 10:00 p.m., they found the building locked, the storage room unlocked, and the alarm deactivated, although defendant reported he had set the alarm when he left. Defendant was one of four people with a key to the building and knowledge of the alarm code.

The fire investigator testified that the sprinkler head directly over the fire had been "super-glued." He also testified that he physically examined the contents of the boxes in which the jewelry, jackets, and painting were allegedly stored, finding nothing but burned paper. He testified that such jewelry would not have burned because the fire was not even hot enough to burn the stored plastic supplies. None of the photographs taken that evening showed the claimed items.

-4-

Further, several employees testified that the sales leads in the storage room were worthless, as they were comprised of already-contacted potential customers who had not purchased anything. Finally, there was evidence that the assets and salary figures claimed in the proof of loss were significantly overstated when compared to payroll and business records. Defendant was convicted of maliciously setting the fire and two counts of mail fraud in obtaining insurance proceeds under false pretenses.

On September 19, 1994, defendant was sentenced to sixty-three months' incarceration and was ordered to pay $61,347.19 in restitution to Unigard. When defendant indicated his intent to appeal, the district court ordered the clerk to file a notice of appeal. Due to inadvertance, this did not occur. In October 1995, defendant filed a motion pursuant to 28 U.S.C. § 2255, seeking an appeal out of time. The motion was granted in August 1996, and counsel was appointed to represent defendant. Additional delays occurred because appointed counsel requested several extensions of time and because an incomplete record was transmitted to the court. On appeal, defendant challenges the jury instructions and the restitution order, and argues that the inordinate delay in deciding his appeal resulted in a violation of his right to due process.

## II. Jury Instructions

Defendant argues the jury instructions were incorrect because (1) the jury was not given a cautionary instruction regarding the testimony of an accomplice, and (2) the instructions improperly defined "maliciously" to include recklessness. When reviewing jury instructions, we examine them as a whole to determine whether the jury may have been misled, upholding the judgment in the absence of "substantial doubt that the jury was fairly guided." United States v. Pappert, 112 F.3d 1073, 1076 (10th Cir. 1997) (quotation omitted). We review an instruction de novo when an objection was made at trial, and for plain error when no such objection was made. See id.

Defendant argues the district court's failure to caution the jury sua sponte regarding the suspect nature of Cummings' accomplice testimony was plain error, requiring reversal. We have held the failure to give such a cautionary instruction is plain error when the accomplice's testimony is uncorroborated. See, e.g., United States v. Hill, 627 F.2d 1052, 1053 (10th Cir. 1980). Here, however, Cummings' testimony was substantially corroborated.

Through other witnesses, there was evidence that defendant was present in the building when the fire was estimated to have begun; that his presence at that time of night was unusual; that he had a strong financial motive to commit arson; and that the sprinkler head was indeed "super-glued" shut. There also was

overwhelming evidence that defendant claimed the loss of items that had not been damaged by the fire or that did not exist. In addition, the district court's credibility instructions to the jury included as a factor to be considered "the witness' interest in the result of the trial." R. I, doc. 59, Instr. 12. Under these circumstances, we conclude it was not plain error to omit an instruction cautioning the jury regarding Cummings' accomplice testimony. See, e.g., United States v. Shuckahosee, 609 F.2d 1351, 1356-57 (10th Cir. 1979) (holding when accomplice's testimony corroborated, general credibility instruction sufficiently informed jury how such testimony should be considered); United States v. Williams, 463 F.2d 393, 395-96 (10th Cir. 1972) (holding failure to give cautionary instruction not reversible error when accomplice's testimony substantially corroborated).

The district court also correctly instructed the jury as to the mens rea required by 18 U.S.C. § 844(i), which punishes a person who "maliciously damages or destroys . . . by means of fire or an explosive, any building . . . used in interstate or foreign commerce . . . ." The jury instructions defined "maliciously" as follows:

> You may not find the defendant guilty for acting mistakenly or carelessly. In order to find defendant guilty you must find that he set the fire . . . intentionally or that he did so recklessly. To do something intentionally is to do it deliberately. To do something recklessly is to do it with willful disregard of the likelihood that damage or destruction would result.

-7-

R. I, doc. 57, Instr. 33.

The federal statute does not define "maliciously." Looking to common law and the legislative history of § 844, several circuits have held the term includes acts done "intentionally or with willful disregard of the likelihood that damage or injury would result." United States v. Gullett, 75 F.3d 941, 947-48 (4th Cir. 1996) (holding § 844(i) employs common law meaning of "maliciously" to include conduct done intentionally or with willful disregard of the likelihood of damage, finding support in legislative history); McFadden v. United States, 814 F.2d 144, 145-46 (3d Cir. 1987) (holding § 844(f) [enacted simultaneously with § 844(i)] incorporates common law meaning of "maliciously," after examining legislative history); see United States v. Corona, 108 F.3d 565, 571 (5th Cir. 1997) (holding § 844(i) employs common law meaning of "maliciously" to include acts done in willful disregard of likelihood of damage); United States v. Sweet, 985 F.2d 443, 445 (8th Cir. 1993) (holding term "maliciously" included acts done intentionally or with willful disregard of likelihood of damage in bomb threat statute, 18 U.S.C. § 35(b)); see also Heggy v. Heggy, 944 F.2d 1537, 1543 (10th Cir. 1991) (indicating a finding that a person acted "maliciously," "oppressively," or "wantonly" includes a finding of recklessness). Applying this definition, we hold the district court did not err in instructing the jury as to the required mens rea.

Our decision in United States v. M.W., 890 F.2d 239, 240-41 (10th Cir. 1989), in which we held the term "willfully and maliciously" included knowing conduct, does not require a contrary result. Section 844(i) requires only that a defendant act maliciously, not willfully. As such, the provision of the Model Penal Code equating willful conduct with knowing conduct does not apply. See Model Penal Code § 2.02(8), at 227 (1985). If anything, the absence of a willfulness requirement indicates that a defendant's conduct need not be knowing to be punishable.

## III. Restitution

Defendant argues the district court erred in ordering restitution without considering the statutory factors set out in 18 U.S.C. § 3664(a) or defendant's ability to pay within a specified period of time. As no objection was raised, we review the court's order for plain error. See United States v. Fisher, 132 F.3d 1327, 1330 (10th Cir. 1997).

Prior to its amendment in 1996, § 3664(a) required the court to consider the financial resources of the defendant, the financial needs and earning ability of the defendant and his dependents, and any other appropriate factor. Specific findings regarding a defendant's ability to pay are not required, so long as sufficient evidence was available to and considered by the sentencing court. See United States v. Kunzman, 54 F.3d 1522, 1532 (10th Cir. 1995). Here, the presentence

report contained information regarding defendant's financial status, his earning potential, his employment history, his education, and his lack of dependents. The district court clearly considered this information in adopting the report's factual findings and in finding that defendant did not have the ability to pay a fine in addition to restitution. See R. VII at 19, 22-23. The court also specified the period of time within which restitution should be made, requiring payments out of defendant's prison earnings while incarcerated, and out of his regular earnings during supervised release. We conclude the court adequately considered the factors enumerated in § 3664(a), including defendant's ability to pay within the specified period of time, and that no plain error occurred.

## IV. Due Process Violation

Finally, defendant argues that he suffered a due process violation due to the inordinate delay in having his appeal decided. In Harris v. Champion, 15 F.3d 1538, 1557 (10th Cir. 1994) (Harris II), we held that inordinate delay in adjudicating a defendant's direct criminal appeal could give rise to an independent due process violation. We identified four factors to be considered: (1) the length of delay; (2) the reason for the delay and whether it was justified; (3) whether defendant asserted his right to a timely appeal; and (4) whether the delay prejudiced defendant in relation to specific interests sought to be protected by a timely appeal. See id. at 1559. In Harris v. Champion, 48 F.3d 1127, 1132

(10th Cir. 1995) (Harris III), we held that a rebuttable presumption of prejudice arises when the delay attributable to the government exceeds two years.

Here, the delay attributable to the government exceeded two years. Even assuming the other three requirements have been fulfilled, we conclude defendant has not suffered a due process violation, as his unsuccessful direct appeal rebuts the presumption of prejudice arising from the delay. See Harris II, 15 F.3d at 1564-65 (explaining that defendant cannot show impairment of ability to mount defense on retrial, constitutionally cognizable anxiety, or oppressive incarceration, if appeal meritless).

We note that even if defendant had established a due process violation, he would not have been entitled to invalidation of his conviction. Our cases have made clear that the remedy for a due process violation caused by inordinate delay is not immediate release from custody, but consideration of defendant's appeal. Issuance of a conditional writ in state habeas cases only ensures that the appeal will be heard, it does not invalidate the underlying conviction. Here, defendant has received his remedy, as we have reviewed the merits of his appeal.

The judgment of the United States District Court for the District of Utah is AFFIRMED.