**F I L E D**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN FABIANO,

    Defendant-Appellant.

No. 98-1048

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-CR-502-Z)

Andrew A. Vogt, Assistant United States Attorney, (Henry L. Solano, United States Attorney, with him on the brief) Denver, Colorado, for Plaintiff-Appellee.

Jill M. Wichlens, Assistant Federal Public Defender, (Michael G. Katz, Federal Public Defender, with her on the brief) Denver, Colorado, for Defendant-Appellant.

Before **TACHA**, **BALDOCK,** and **MURPHY**, Circuit Judges.

**BALDOCK**, Circuit Judge.

Defendant John Fabiano appeals his conviction for knowingly receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2). Defendant was charged in a fifteen-count indictment with transporting, receiving and possessing child pornography in

violation of 18 U.S.C. §§ 2252(a)(1), (a)(2) and (a)(4)(B). A jury convicted him of two counts of knowingly receiving visual depictions of child pornography, in violation of § 2252(a)(2), and acquitted him on the remaining thirteen counts. The district court sentenced Defendant to 24-months imprisonment and three years of supervised release. On appeal, Defendant raises three errors. First, Defendant argues that the jury was not properly instructed regarding when Defendant had to know that the visual depictions he received were child pornography. Second, Defendant argues that the evidence was insufficient to prove that Defendant knew, prior to receiving the visual depictions, that the images depicted minors engaged in sexually explicit conduct. Finally, Defendant argues that the district court erred by ordering Defendant to comply with the requirements of the Colorado sex offender registration statute as a condition of supervised release. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). We affirm.

I. Background

After a tip from a confidential informant, federal law enforcement agents began monitoring a private Internet "chat room" named "Preteen." The chat room was accessible to subscribers of America Online ("AOL"). Agents monitored the activity in the Preteen chat room by logging into the room and participating in and observing the conversations among the participants.[1] As a result, agents learned that the participants in

_____

[1] Each subscriber who logged into the Preteen chat room is provided with the "screen names" of all other individuals in the chat room at that time. Subscribers in the
(continued...)

the Preteen chat room were discussing and trading computer-generated images depicting child pornography. Agents kept chat logs, or transcripts, of the electronic conversations they were monitoring.

In April 1996, Defendant's "screen names" began appearing on the Preteen chat logs, indicating that Defendant was visiting the chat room and conversing with the other participants. On September 10, 1996, Defendant, along with other individuals logged into the chat room, received two e-mails with attached files. Attached to the first e-mail message was a file titled "3CUMFAC." Attached to the second message was a file titled "6SUK." Both files depicted children engaged in sexual acts. After receiving these files, Defendant continued to log onto the Preteen chat room for two months.

On December 11, 1996, agents searched Defendant's home in Broomfield, Colorado pursuant to a warrant. Agents seized two computers along with some computer diskettes. On February 27, 1997, Defendant was charged with fifteen counts of transporting, possessing and receiving child pornography, including two counts of knowingly receiving child pornography arising from his receipt of the two files on September 10, 1996. After an eleven-day trial, a jury convicted Defendant of these two counts of knowing receipt and acquitted him on all other charges.

---

[1](...continued)
chat room can electronically communicate by sending messages and pictures to every other subscriber in the chat room or by sending private messages to individual subscribers.

## II. Analysis

### A. Jury Instructions

Defendant argues that the district court failed to properly instruct the jury on the Government's burden of proof regarding Defendant's knowledge of the content of the visual depictions he received. Specifically, Defendant asserts that the elements of the offense instruction failed to make clear that Defendant must have known, before he received the computer files, that they depicted minors engaged in sexually explicit conduct. Therefore, Defendant asserts that the elements of the offense instruction is erroneous.

We review a jury instruction de novo when an objection is made at trial, and for plain error when no objection was made. United States v. Pappert, 112 F.3d 1073, 1076 (10th Cir. 1997); see Fed. R. Crim. P. 52(b). In this case, Defendant offered an instruction on the elements of the offense, which the district court rejected.[2] Defendant did not specifically object, however, to the elements instruction given by the court. By failing to object to the court's instruction, Defendant failed to put the district court "clearly on notice as to the asserted inadequacy" of the jury instruction. United States v. Duran, 133 F.3d 1324, 1330 (10th Cir. 1998). Therefore, we review for plain error. See id.; see also United States v. Martinez, 776 F.2d 1481, 1484 (10th Cir. 1985) (tendering

---

[2] The reasons for the district court's rejection of Defendant's proposed instruction are unclear because the jury instruction conference was not conducted on the record.

4

jury instructions which were not given does not preserve the issue for appeal).

Under this standard, Defendant must show: (1) an "error," (2) that is "plain," which means "clear" or "obvious" under current law, and (3) that "affect[s] substantial rights." Johnson v. United States, 117 S.Ct. 1544, 1549 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). If these three requirements are met, then we may exercise discretion to correct the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (internal quotations omitted).

We must first determine whether the challenged jury instruction was error. When reviewing jury instructions for error, we view them as a whole "to determine whether the jury may have been misled, upholding the judgment in the absence of substantial doubt that the jury was fairly guided." United States v. Wiktor, 146 F.3d 815, 817 (10th Cir. 1998) (internal quotations omitted).

In this case, the district court gave the following elements of the offense instruction:

> The essential elements required to be proven in order to establish an offense under 18 U.S.C. § 2252(a)(2) are:
>
> First: That the Defendant knowingly received a visual depiction which had been shipped or transported in interstate commerce by computer;
>
> Second: That the production of the visual depiction involved, and the defendant knew it involved, the use of a minor engaging in sexually explicit conduct; and

5

Third: That the visual depiction was of such conduct.[3]

The district court also gave separate instructions on "knowingly" and "knowingly received."  The "knowingly" instruction stated:

> An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.
> In this case, the term "knowingly" refers to an awareness of the sexually explicit nature of the material, and to the knowledge that the visual depictions were in fact of minors engaged in that sexually explicit conduct.
> The United States must show that the Defendant had knowledge of the general nature of the contents of the material.  The Defendant need not have specific knowledge as to the actual age of the underage performer.  The Defendant must have knowledge or an awareness that the material contained a visual depiction of a minor engaging in sexually explicit conduct.  Such knowledge may be shown by direct or circumstantial evidence, or both.  Eyewitness testimony of the Defendant's perusal of the material is not necessary to prove his awareness of its contents; the circumstances may warrant an inference that he was aware of what the material depicts.  Furthermore, the Defendant's belief as to the legality or illegality of the material is irrelevant.

The district court also gave the following instruction on "knowingly received":

> You are instructed that the term "knowingly received" includes knowing acceptance of requested material.  The material does not have to be maintained or stored.  "Knowing receipt" means more than simply having e-mail sent to a computer.  If John Fabiano requested the images in question, and they were ultimately sent to him by e-mail, you may find that is

---

[3] Defendant's proposed instruction differed only slightly.  In it the second element of the offense read: "That the Defendant knew that the production of that visual depiction involved the use of a minor engaging in sexually explicit conduct prior to his having received it."  Defendant's argument rests upon the district court's deletion of "prior to his having received it."

6

sufficient to show he "knowingly received" them.  If John Fabiano did not request the images in question, you may find that he did not "knowingly receive" them.

Defendant argues not only that the elements instruction was erroneous, but that the other instructions given by the Court did not cure the error.  Viewing these instructions collectively, we conclude no error occurred.

First, the elements instruction comports with the requirements set forth by the Supreme Court in United States v. X-Citement Video, Inc., 513 U.S. 64 (1994).  In X-Citement, the Court held that the "knowingly" scienter requirement in § 2252 applies, not only to "receives," but also to "the sexually explicit nature of the material and to the age of the performers."  Id. at 78.  Thus, in a § 2252(a)(2) case, the Government must not only prove that the defendant "knowingly received" a visual depiction, but also that the defendant knew that the material was sexually explicit and that the performers were minors.  See United States v. Cedelle, 89 F.3d 181, 185 (4th Cir. 1996).

In this case, the jury was instructed by the elements instruction that Defendant must have known that the "production of the visual depiction involved . . . the use of a minor engaged in sexually explicit conduct."  In addition, the "knowingly" instruction informed the jury that "knowingly" refers to both "an awareness of the sexually explicit nature of the material, *and* to the knowledge that the visual depictions were in fact of minors engaged in that sexually explicit conduct." (emphasis added).  Thus, the instructions comply with X-Citement Video.

7

Furthermore, the instructions, viewed together, properly instructed the jury as to when Defendant had to know the material he received involved minors engaged in sexually explicit conduct. For example, the "knowingly received" instruction stated that "'knowing receipt' means more than simply having e-mail sent to a computer." That instruction also stated that "[i]f John Fabiano did not request the images in question, you may find that he did not 'knowingly receive' them." The "knowingly" instruction stated that "knowingly" does not mean "mistake or accident or other innocent reason." Thus, these instructions did not permit the jury to find Defendant guilty of "knowingly receiving" child pornography in violation of § 2252(a)(2), if the evidence showed that Defendant merely acquired the e-mail's without knowledge of their content, i.e., by accident or mistake. Furthermore, nothing in the language of the instructions suggests that after-acquired knowledge of the content of these visual depictions would be sufficient to convict Defendant under § 2252(a)(2). It follows from these instructions that the jury found that Defendant had the requisite knowledge, before he received the visual depictions, of the content of these images.

Second, we disagree with Defendant that X-Citement Video requires an additional statement in the elements of the offense instruction regarding *when* Defendant acquired the requisite knowledge. In X-Citement Video, the Court held only that the § 2252 scienter requirement applies to both the sexually explicit nature of the material and to the age of the performers. Regardless, the instructions in this case properly informed the jury

8

as to when Defendant must have been aware of the nature and content of the material he received.

Finally, Defendant's reliance on United States v. Cedrelle, 89 F.3d 181 (4th Cir. 1996) is misplaced. In Cedrelle, the Fourth Circuit found plain error where a § 2252(a)(2) elements of the offense instruction did not comply with X-Citement Video. Cedrelle ran afoul of X-Citement Video because the jury was not instructed that the defendant had to have knowledge that the materials he received were depictions of minors engaged in sexually explicit acts. See Cedrelle, 89 F.3d at 184. Cedrelle did not hold that the elements of the offense instruction must include a statement explaining when the requisite knowledge must have been acquired by the defendant. Thus, the jury instructions in Cedrelle are distinguishable from the instructions given in this case.

Viewing the instructions as a whole, we are not left with "substantial doubt that the jury was fairly guided." Wiktor, 146 F.3d at 817. Consequently, we find no error in the instructions given by the district court. Having found no error, normally our plain error analysis would end. However, the Government, while not conceding error, did admit at oral argument that an elements of the offense instruction which explicitly addressed *when* knowledge must be acquired would have been preferable. In light of the Government's statement, we assume arguendo that the instruction as given was error and constituted plain error. Even so assuming, we would decline to exercise our discretion to grant relief because Defendant has not demonstrated that he was prejudiced by the error. See United

9

States v. Bell, 154 F.3d 1205, 1209 (10th Cir. 1998). The claimed error in the jury instructions would not result in a miscarriage of justice or "seriously affect the fairness, integrity, or public reputation of the judiciary," because the evidence was overwhelming regarding Defendant's prior knowledge of the content of the visual depictions he received. See Olano, 507 U.S. at 736. Defendant had been a regular visitor to the Preteen chat room for several months before he received the two files which were the subjects of the counts of conviction. He was present in the Preteen chat room when graphic discussions took place regarding the content of material sent and traded in the Preteen chat room. Defendant also offered to trade in the Preteen chat room and asked to be included in mailings sent by other participants. In light of this evidence, the proceedings resulted in a "fair and reliable determination" of Defendant's guilt and, even assuming plain error, a reversal would be unwarranted. See United States v. Cedrelle, 89 F.3d 181, 186 (4th Cir. 1996).

## B. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to prove that he knew before receiving the pictures that the visual depictions showed minors engaged in sexually explicit conduct. Sufficiency of the evidence is a question of law reviewed de novo. United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997). We will not reverse a conviction based upon insufficient evidence unless no rational trier of fact could have reached the disputed verdict. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). In

10

reviewing the record, we view the evidence and the reasonable inferences to be drawn therefrom in a light most favorable to the government.  Id.; United States v. Haslip, 160 F.3d 649, 652-53 (10th Cir. 1998).   We do not weigh the evidence or consider the credibility of the witnesses.  Haslip, 160 F.3d at 653.

In order to find a defendant guilty of knowing receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), a jury must find beyond a reasonable doubt that: (1) Defendant knowingly received a visual depiction sent in interstate commerce via computer; (2) which Defendant knew depicted a minor engaged in sexually explicit conduct.  See X-Citement Video, 513 U.S. at 78.  After reviewing the record, we find ample evidence to support the jury's verdict that Defendant was guilty of knowingly receiving visual depictions of minors engaged in sexually explicit conduct.

The evidence shows that Defendant visited the Preteen chat room for approximately five months prior to receiving the two visual depictions which were the subjects of Counts II and III of the indictment.   The chat room logs introduced at trial show that Defendant observed and participated in discussions in the Preteen chat room from which a jury could reasonably conclude that he was aware of the type of material traded in the room.  For example, on May 16, 1996, while Defendant was logged on in the Preteen chat room, the participants discussed mailings and trading pictures.  One participant, screen name "JPavlik984," inquired "Anyone wanna trade 6-11."  Screen name "Mbuckinghm," asked "how young is everybody into?" "LOOkatpics" responded

11

"jp I have 6 to 11 in the mass mail I am sending out in 5 min's."  When "LOOkatpics" said "time's up here comes the mail!!", Defendant, logged on as "Brooke9696," responded with "send to me PLEEEEZEE."

On September 4-5, 1996, just days before Defendant received the files which were the subject of the two counts of conviction, he was logged onto the Preteen chat room. On September 4, "Nirvana22" asked "Anyone want to trade boys?"  Defendant, logged on as "TanLegs" responded "won't they mind?"  "Nirvana22" asked "TanLegs, you want to trade boys?"  Defendant did not respond but remained in the chat room while the participants discussed sexual acts with boys.   On September 5, screen name "Heidelb" said "lets go send preteen pics."  Defendant, logged on again as "TanLegs" responded "list me and I will return."[4]

On September 10, 1996, the same day Defendant received the two files which were the subjects of Counts II and III of the indictment,  Defendant, signed on as "TanLegs," was in the chat room when the following comments were sent: "please send young teens," "i got lots of preteen," and "need animal shots will trade pre teen for animal."

After Defendant received the two sexually explicit e-mails on September 10, 1996, he did not discontinue his visits to the Preteen chat room.  Instead, he continued to frequent the Preteen chat room until November 1996.   For example, on September 11,

_____

    [4]  Special Agent Steven MacMartin testified that this statement means put me on the mailing list to receive messages and I will respond in kind.

12

1996, Defendant entered the Preteen chat room and inquired "anyone trading." On September 12, 1996, Defendant, logged on as "TanLegs," told the participants in the Preteen chat room that "i will gladly trade one on one or contribute to any list going on." Special Agent Daniel Chadwick testified that this meant that Defendant was willing to set up a trade and if someone would send him a picture, he would send them one.

Defendant's statements to investigators during questioning are also relevant to Defendant's knowledge of the nature of the materials he received while in the Preteen chat room. Agents testified that Defendant admitted that he visited the Preteen chat room and viewed a large number of pictures. He also told the agents that he received nude pictures of adults and children, including children involved in sexual acts. Defendant said that he downloaded the images onto diskettes and then deleted any images that depicted children involved in sexual acts because he thought these images were illegal. He indicated that he downloaded images onto diskettes so that he would have files to trade in the Preteen chat room.

Finally, the graphically descriptive names of the files Defendant received on September 10, 1996, – "3CUMFAC" and "6SUK" – also support Defendant's conviction for "knowing receipt" of child pornography. From the above testimony and the chat room logs introduced as exhibits at trial, a jury could reasonably conclude that Defendant knew that the participants in the chat room were trading images of child pornography and that Defendant requested and knowingly received such images. In light of the evidence before

13

the jury, we cannot conclude that "no reasonable juror" could have reached this verdict. Carter, 130 F.3d at 1439. Consequently, the evidence is sufficient to support Defendant's conviction on the two counts of knowingly receiving child pornography.

## C. Supervised Release

Defendant argues that the district court erred by requiring him, as a condition of supervised release, to comply with the registration requirements of the Colorado sex offender registration statute, Colo. Rev. Stat. § 18-3-412.5. Defendant argues that his conviction does not fall within the purview of the statute. Defendant did not object to this condition of supervised release. Therefore, we review the district court's imposition of the condition for plain error. United States v. Orozco-Rodriguez, 60 F.3d 705 (10th Cir. 1995).

District courts have broad discretion to fashion conditions of supervised release. See United States v. Edgin, 92 F.3d 1044, 1048 (10th Cir. 1996). In addition to certain mandatory conditions of supervised release set forth in 18 U.S.C. § 3583(d), a court may impose additional conditions to the extent that such conditions "involve no greater deprivation of liberty than is reasonably necessary" to deter criminal conduct, protect the public, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. §§ 3583(d) and 3553(a)(2). Section 3583(d) also provides that the conditions must be "reasonably related" to "the nature and circumstances of the offense and the history and characteristics of the defendant." 18

14

U.S.C. §§ 3583(d)(1) and 3553(a)(1)

As a condition of supervised release, the district court ordered Defendant to "comply with the State of Colorado Sex Offender registration requirements for convicted sex offenders pursuant to Colorado Revised Statutes 18-3-412.5." Section 18-3-412.5(1)(b) provides that:

> On and after July 1, 1994, any person who is convicted in the state of Colorado of an offense involving unlawful sexual behavior or for which the factual basis involved an offense involving unlawful sexual behavior . . . shall be required to register in the manner prescribed in subsection (3) of this section.

Col. Rev. Stat. § 18-3-412.5(1)(b). Subsection (3) requires individuals who fall within the reach of the statute to register with local law enforcement "within seven days of becoming a temporary or permanent resident of any city, town, county . . . in the state of Colorado" and "annually thereafter" for ten years. Col. Rev. Stat. § 18-3-412.5(3).

Defendant argues that because the statute's definition of "unlawful sexual behavior" does not explicitly list the offense he was convicted of, knowingly receiving child pornography, Defendant does not fall within the reach of the statute. We need not decide whether Defendant's conduct falls within the statutory definition of "unlawful sexual behavior," because even if it does not, the district court, in its discretion could have properly ordered Defendant to register as a sex offender in Colorado as a condition of supervised release. See United States v. Coenen, 135 F.3d 938, 946 (5th Cir. 1998) (district court did not abuse its discretion by requiring the defendant to notify local law

15

enforcement of his name, address and the crime for which he was convicted).

Under 18 U.S.C. § 3583(d), a district court may impose conditions of supervised release in addition to those contained in the statute so long as they are reasonably related to the nature and circumstances of the offense, and the history and characteristics of the defendant. Requiring Defendant to register with local law enforcement is reasonable. As a convicted sex offender, the registration requirement was reasonably related to (1) deterrence of criminal conduct by Defendant; and (2) protection of the public. See Coenen, 135 F.3d at 945. A jury convicted Defendant of a child pornography offense, based on his receipt of two visual images depicting children involved in sexual acts. For several months, Defendant frequently visited a Preteen chat room where child pornography and other material was traded. He told FBI investigators that he sent and received pictures of nude[5] children over the Internet and that he stored such images in order to have material to trade in the Preteen chat room.

Furthermore, the registration requirement involves "no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). To comply with the registration requirement, Defendant must provide only limited personal information to local law enforcement. See id. at 946. The district court acted well within its discretion by imposing this condition of supervised release.

Defendant also argues that the district court was not exercising its discretion when

---

[5] Defendant denied sending pictures depicting children engaged in sexual acts.

16

it ordered compliance with the registration statute, but instead required compliance with the Colorado statute because of an erroneous belief that Defendant's compliance was mandatory under Colorado law. We disagree. The presentence report ("PSR") recommended that "in *view of the nature of the offense*, the Court may also wish to *consider* imposing the following special conditions." (emphasis added). One of the proposed conditions was that "the defendant shall comply with the State of Colorado Sex Offender Registration requirements for convicted sex offenders pursuant to Colorado Revised Statutes § 18-3-412.5." Importantly, the PSR did not state that Defendant was required to comply with the statute. Instead, the PSR merely offered it as one of several options for the district court to consider. At sentencing, the district court, during the discussion of the conditions of supervised release, stated:

> The next point – and I want to point this out – is that there is a statute in Colorado that requires registration for people who meet the definition under the statute. It's the sex offender registration requirement. And that's 18-3-412.5, and that's something that unless Mr. Lane [defense counsel] otherwise advises – that's something that should be taken care of as far as registration.

Defense counsel did not object and the registration requirement was included in the judgment. Granted, the district court did not clearly articulate the rationale behind the imposition of this condition. When the court's statement is viewed in light of the PSR, however, we may reasonably infer that the district court *chose* to include the condition of supervised relief because it was appropriate under the circumstances, not because it believed Colorado law required such a result. Consequently, we reject Defendant's

17

argument that the district court relied upon a mistaken notion that compliance with the Colorado statute was mandatory.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court.