PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANGELIA LARUE MITCHELL,

Defendant-Appellant.

No. 04-4248

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:03-CR-761-TC)**

---

Submitted on the briefs.

Randy S. Ludlow, Salt Lake City, Utah, for Defendant-Appellant.

Paul Warner, United States Attorney, Lynda Rolston Krause, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **McCONNELL**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Two troopers with the Utah highway patrol conducted a warrantless search

of a motel room and found stolen mail. Angelia Larue Mitchell, who had been

staying in the room, was indicted before the United States District Court in the District of Utah on two counts of possession of stolen mail. Ms. Mitchell filed a motion to suppress the evidence found in the motel room. The district court conducted an evidentiary hearing, after which it denied Ms. Mitchell's motion on the grounds that she had abandoned the room and its contents prior to the search. After her motion was denied, Ms. Mitchell entered a conditional plea of guilty on count I of the indictment. The court sentenced her to ten months in prison followed by a thirty-six month term of supervised release. One of the conditions of her supervised release was that she must remain current on the restitution payments owed from her previous two federal convictions.

On appeal, Ms. Mitchell challenges her conviction and the special condition of supervised release. Although Ms. Mitchell claims that she reserved the motel room for another night prior to the search, and produced a copy of the motel ledger which lends some support to her claim, we hold that the district court did not commit clear error in its finding that Ms. Mitchell abandoned the room before it was searched. We also find, as an alternative basis for upholding the district court's order denying the motion to suppress, that because the troopers were repeatedly told by the motel clerks that the room was unoccupied, they had apparent authority for the search. Finally, although courts may order restitution only for those losses caused by conduct related to the offense of conviction, we

hold that a special condition of supervised release which requires the defendant to remain current on restitution payments from previous criminal convictions is not subject to the limitations of restitution. We therefore **AFFIRM** the conviction and sentence imposed by the district court.

## BACKGROUND

On the morning of March 22, 2003, James Martin, a trooper with the Utah Highway Patrol, was performing a routine search for stolen vehicles in the area of Midvale, Utah. At approximately 5:45 a.m., Trooper Martin discovered a red Dodge Neon with stolen license plates parked outside the La Quinta Inn. He ran the car's vehicle identification number through his computer and determined that the vehicle was registered to an Angelia Mitchell. The vehicle's proper license plates were visible inside the car.

In an attempt to locate the owner or current possessor of the vehicle, Trooper Martin went into the front lobby of the La Quinta Inn and asked the clerk, Erika Soledad Villa, whether anyone with a red Dodge Neon was registered at the motel, or whether anyone by the name of Angelia Mitchell had checked into any of the rooms. Ms. Villa told him that there was no one by that name or with that type of vehicle registered at the motel.

Trooper Martin informed Ms. Villa that he was having the vehicle impounded. He gave Ms. Villa his business card with the phone number for police dispatch written on the back, and asked her to give the number to anyone who came looking for the car. He also asked Ms. Villa to call the dispatch and let them know if anyone came in asking about the car, in case the person asking had stolen it.

Later that day, sometime between 12:00 p.m. and 1:00 p.m., Ms. Mitchell, who was staying in Room 266 of the motel, came down from her room and noticed that her car was missing. Ms. Villa had been unaware that Ms. Mitchell was staying at the motel because her room was registered to a man named Cedric Wilkins, and neither Ms. Mitchell nor her car were listed in the motel's files. Ms. Mitchell had been paying for the room, however, and had been staying there for over a week. When Ms. Mitchell discovered that her car was missing from the motel parking lot, she went down to the front desk to inquire about its whereabouts, and was told by Ms. Villa that it had been impounded by the police.

What happened next is contested by the parties. Ms. Villa testified that Ms. Mitchell became upset and checked out of the motel after learning that her car had been impounded. According to Ms. Mitchell, she never checked out of the room, and actually paid for another night at the motel while talking to Ms. Villa. Ms. Mitchell testified that there was another front desk clerk working alongside Ms.

Villa, and that the other clerk was the one who handled her payment. However, both Ms. Villa and Irene Gish, one of the motel's managers, testified that Ms. Villa was the only motel employee working at the front desk between 7:00 a.m. and 3:00 p.m that day. After the encounter between Ms. Mitchell and Ms. Villa, Ms. Mitchell left the motel in another vehicle.

At approximately 2:55 p.m., a clerk at the La Quinta Inn, probably Ms. Villa, telephoned Trooper Martin. The clerk told him that "a lady had come in inquiring about her vehicle, the [red Dodge Neon, and] ... when she'd been told that the Dodge had been impounded, ... she checked out of the room and left in another vehicle." R. Vol. II 44. Before Ms. Villa's shift ended at 3:00 p.m., she also told the incoming front desk clerk, Jennifer Mabey, about the "stolen vehicle," and that the person in Room 266 had "already checked out." *Id.* at 12. Ms. Mabey did not testify at the evidentiary hearing.

Just after 3:00 p.m., only five or ten minutes after his telephone conversation with the clerk, Trooper Martin arrived back at the La Quinta Inn. He was accompanied by another trooper from the Utah Highway Patrol, Jacob Hicks. Troopers Martin and Hicks went inside the motel and asked the front desk clerk, probably Ms. Mabey, about the woman who had inquired about the red Dodge Neon. Trooper Martin specifically asked the clerk if the woman had checked out of the motel. She told him that the woman had "paid for and checked

out of [Room 266]." *Id.* at 45. She also showed the troopers a room ledger that listed Room 266 as registered to a Cedric Wilkins, and again stated that "the woman had come in, paid for the room and then had checked out of the room, and the room was now not registered in their name." *Id*. at 48. Trooper Hicks asked the clerk again whether the woman had checked out of Room 266, asking "So she's not in the room? She's checked out? She's paid?," to which the front desk clerk replied "Yes." *Id*. at 63. The clerk then offered Troopers Martin and Hicks a key to Room 266.

The troopers took the room key from the clerk and searched Room 266. When they entered the room, there were papers and other personal items immediately visible on the floor and table. There was clothing in the room as well, although the troopers did not see it at first because it was in a pile on the floor of the closet. The troopers also discovered two personal checks in the room, neither of which was written by or payable to Ms. Mitchell. One of the checks was sitting in a chemical solution used to remove ink. Based on this evidence, the police obtained a warrant to search Ms. Mitchell's vehicle. Their search of the vehicle turned up a check printer machine and a folder containing the medical records of a female other than Ms. Mitchell. Further investigation revealed that the checks found in Room 266 and the medical file found in Ms. Mitchell's

vehicle had been taken from a United States Postal Service collection box in Murray, Utah a week before.

According to the testimony of Ms. Mitchell, she returned to the motel at approximately 10:00 p.m., several hours after the police had searched Room 266. Her key to the room no longer worked, and so she went down to speak with the clerk at the front desk. Ms. Mitchell testified that the clerk told her that the police had searched Room 266 and said not to let her back in the room. Ms. Mitchell claimed that she then demanded a refund from the clerk, "because [she] had paid," but was told to come back when a manager was on duty. R. Vol. II 70. According to Ms. Mitchell, she returned to the motel two days later and received a refund, although Ms. Gish, the motel manager who was on duty between 7:00 a.m. and 3:00 p.m. that day, testified that she never gave Ms. Mitchell a refund. She also testified that it would have been improper to have given Ms. Mitchell a refund because she was not the registered occupant of Room 266, and the motel's policy is that it only gives refunds to the registered occupant.

On September 23, 2003, Angelia Mitchell was charged in a two-count indictment with possession of stolen mail under 18 U.S.C. § 1708. Ms. Mitchell filed a motion to suppress all of the evidence found by the police in Room 266. The government, relying mostly on the testimony of the motel's front desk clerk, Ms. Villa, argued that Ms. Mitchell checked out of the motel before the police

searched Room 266, and she therefore had no standing to challenge the search. The government also argued that there was apparent authority for the search because the police were repeatedly told by motel staff that the occupant of Room 266 had checked out, and it was therefore reasonable to believe that the clerks had authority to consent to the search.

Ms. Mitchell claimed that she paid for another night's stay in Room 266 after talking with Ms. Villa at the front desk. The motel ledger for Room 266 lends some support to Ms. Mitchell's story. Motel policy requires that all rooms must be paid for in advance, and the ledger shows that on March 22, 2003, the day the police searched Room 266, a cash payment was made to the motel in the amount of $46.81, the nightly rental rate plus tax. During cross-examination, Ms. Villa admitted that this ledger suggests that Room 266 was "continually rented" during the period of the search. R. Vol. II 16–17.

The government never disputed that the ledger for Room 266 shows a cash payment made to the motel on March 22, 2003, but suggested in its brief to the district court that Ms. Mitchell made the payment sometime after the search. The government based its argument on the testimony of Ms. Villa, who stated that when Ms. Mitchell checked out of the motel there was a zero balance on the ledger for Room 266, and that she did not receive any payments for the room before her shift ended at 3:00 p.m. The troopers arrived at the motel only a few

minutes after Ms. Villa's shift ended, which suggests that the payment shown on the ledger must have been made sometime after the police arrived and searched the room.

After examining the evidence the district court determined that Ms. Mitchell had abandoned Room 266 and its contents prior to the search, and therefore denied Ms. Mitchell's motion to suppress the evidence found in Room 266. Order Den. Def.'s Mot. to Suppress, No. 2:03CR00761TC (D. Utah filed Jun. 21, 2004). The court recognized that there was a "discrepancy" between Ms. Villa's testimony that Ms. Mitchell checked out of the motel, and the ledger for Room 266, which showed a cash payment to the motel on March 22, 2003. *Id.* at 6. Nonetheless, the court found that Ms. Villa was a "credible witness," and accepted her testimony that when Ms. Mitchell checked out of the motel, the ledger for Room 266 showed a zero balance. *Id.* at 2–3, 6. In contrast, the court found that "Ms. Mitchell's version of events was not credible." *Id.* at 5. In particular, the court concluded that "Ms. Mitchell's explanations of why she was unable to check into Room 266 herself and her denial of any knowledge that there were stolen license plates on her car were not persuasive."[1] *Id.* The court also

_____

[1]Ms. Mitchell testified that without her knowledge, her boyfriend put the stolen license plate on her car because the old plates had expired. She also testified that her friend, Cedric Wilkins, registered at the motel for her because her purse had been stolen and she could not rent a room herself without a drivers

(continued...)

noted that Ms. Mitchell's testimony regarding the refund she allegedly received and the number of clerks working at the front desk was contradicted by Ms. Gish, the motel manager. *Id.* In light of these credibility determinations, the court concluded that "the evidence clearly shows that objective facts available to the troopers indicated that the occupants of Room 266 had checked out of the room." *Id.* at 6.

On July 21, 2004, Ms. Mitchell entered a conditional plea of guilty on Count I of the indictment for possession of stolen mail. In the plea agreement, Ms. Mitchell reserved her right to appeal the district court's order denying her motion to suppress.

The district court granted a motion by the government for an upward departure, and sentenced Ms. Mitchell to ten months in prison followed by a three-year term of supervised release. The court found "clear evidence of recidivism," as shown by Ms. Mitchell's two prior federal convictions for possession of stolen mail and four prior state convictions for misdemeanor forgery, all of which involved stolen checks that she counterfeited, forged or altered. The court also noted that after both federal convictions, Ms. Mitchell violated the terms of her supervised release by testing positive for

---

[1](...continued)
license.

methamphetamine use and failing to complete the court-ordered inpatient drug treatment program. Moreover, Ms. Mitchell had failed to pay more than $19,000 in court-ordered restitution stemming from her two prior federal convictions. The district judge noted that although "possession of stolen mail sounds benign," Ms. Mitchell's pattern of stealing checks from the mail "causes loss to people[] and funds a drug habit," which makes her offenses "very serious crimes." R. Vol. III 8. Additionally, based on her pattern of recidivism, the judge found that Ms. Mitchell "presents a danger to society." *Id.*

In addition to the enhanced sentence, the district court imposed a number of special conditions upon Ms. Mitchell during her supervised release. One of the conditions was that Ms. Mitchell must "remain current in her payments of her restitution in her previous federal cases, and she will follow the schedules that have been previously established by the United States Probation Office." R. Vol. III 12. The court entered its judgment on October 7, 2004.

On October 12, 2004, Ms. Mitchell filed a notice of appeal from her conviction and sentence. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## DISCUSSION

## I

The district court denied Ms. Mitchell's motion to suppress because it concluded that she had abandoned Room 266 and its contents before the room was searched. On appeal, Ms. Mitchell argues that the district court's order should be reversed, and her conviction overturned, because the testimony and documentary evidence presented at the evidentiary hearing prove she was still occupying the room. Ms. Mitchell also argues that the troopers did not have apparent authority to search Room 266 because a reasonable officer would have known that the room was still occupied after entering and seeing that her personal belongings were still there.

When reviewing a district court's denial of a motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Garner*, 416 F.3d 1208, 1212 (10th Cir. 2005). We accept the district court's factual findings unless they are clearly erroneous. *Id.* "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law that we review de novo. *Id.*

After reviewing the evidence presented on appeal, this Court concludes that the district court's finding that Ms. Mitchell abandoned Room 266 and its contents is not clearly erroneous. Moreover, even if the district court committed clear error in finding that Ms. Mitchell lacked standing to challenge the search, this Court would still affirm the order denying her motion to suppress on the ground that the troopers had apparent authority to enter and search the motel room.

**A**

At issue on appeal is whether Ms. Mitchell abandoned Room 266 and its contents before it was searched by the police, and therefore lacks standing to challenge the search. *See United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997) ("[A] defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned."). The test for abandonment is whether the defendant has retained any reasonable expectation of privacy in the property. *United States v. Burbage*, 365 F.3d 1174, 1178 (10th Cir. 2004). "An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts." *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993).

In this case, whether Ms. Mitchell abandoned the motel room and its contents depends upon whether she checked out of the motel before the search.

-13-

We agree with Ms. Mitchell that she had a reasonable expectation of privacy in Room 266 during her stay at the motel. That expectation of privacy does not extend beyond the time when she checked out of the motel, however. "When the rental period [for a motel room] has elapsed, the guest has completely lost his right to use the room and any privacy associated with it." *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970). Consequently, if at the time of the search Ms. Mitchell had already checked out of the motel, the room where she was staying and any objects she intentionally left behind in it are considered abandoned property.

The district court was faced with conflicting testimony about whether Ms. Mitchell checked out of the motel before the search. Ms. Villa, the front desk clerk, testified that Ms. Mitchell "came down from Room 266 asking me about the stolen vehicle," and when "I [] told her that the sheriff had come in that morning during my shift and had told me about the car being towed[,] . . . she said that she was checking out." R. Vol. II 7. According to Ms. Mitchell, however, she "went to the front desk to talk to them more about [her car], and [she] paid for the room for another night." *Id.* at 67. Ms. Mitchell claimed that the story told by Ms. Villa was a "lie." *Id.* at 73. The district court determined that Ms. Villa was a more credible witness than Ms. Mitchell, and therefore accepted Ms. Villa's testimony about Ms. Mitchell checking out of the motel.

On appeal, Ms. Mitchell offers three arguments for why this ruling is clearly erroneous, none of which we find persuasive. First, Ms. Mitchell points to a portion of Trooper Martin's testimony where he stated that the front desk clerk told him that the occupant had "paid for the room" that morning. R. Vol. II 48. Because the motel requires its guests to pay in advance, Ms. Mitchell argues that Trooper Martin's testimony supports her claim that she reserved Room 266 for another night prior to the search. When asked about the specific words used by the front desk clerk, however, Trooper Martin testified that "[s]he said the room *had been paid for* and that they've checked out." R. Vol. II 50 (emphasis added). This version of his testimony actually supports Ms. Villa's claim that there was a zero balance on the account for Room 266 when Ms. Mitchell checked out of the motel. The inconsistency between Trooper Martin's earlier and later statement does not establish a clear error in the district court's ruling.

Second, Ms. Mitchell argues that the presence of her personal belongings in Room 266 at the time of the search proves she was still occupying the room. We disagree. Considering the evidence in the light most favorable to the government, it is possible that Ms. Mitchell left some of her belongings behind in the room after checking out of the motel. Ms. Mitchell, a convicted felon, checked into the motel under someone else's name and had a stolen license plate on her car, all of which suggests she may have been trying to hide from the authorities. According

to Ms. Villa, when Ms. Mitchell found out that the police had impounded her car, she became "really upset" and "said that she was checking out" of the motel. R. Vol. II 7. Based on this evidence, it is not unreasonable to suspect that Ms. Mitchell was fleeing from the police at the time she checked out of the motel, and that in the rush to escape she left behind some of her belongings. Consequently, the fact that some of her personal items were still in the room at the time of the search does not make the district court's decision clearly erroneous.

Third, Ms. Mitchell argues that the ledger for Room 266—which records a $46.81 payment to the motel on March 22, 2003—proves she had possession of the room at the time of the search. During cross-examination, Ms. Villa admitted that the ledger shows that Room 266 "was never relinquished or released." R. Vol. II 17. However, she still maintained that Ms. Mitchell checked out of the motel, and testified that at the time of the checkout there was no payment from that day listed on the ledger. In the government's brief to the district court, it argued that the payment listed on the ledger from March 22 must have been made sometime after the troopers searched Ms. Mitchell's old room—apparently by Ms. Mitchell, who could have seen the police searching her old room and decided to check back into the motel so that she could challenge the search. The district court presumably accepted this account of events when it concluded that "[w]hatever discrepancy exists between Ms. Villa's testimony . . . and the

documentary exhibits . . . does not compel a different conclusion" from Ms. Villa's claim that "when Ms. Mitchell checked out, the [ledger] showed a zero balance." Order Den. Def.'s Mot. to Suppress 6.

Because the ledger for Room 266 does not list the precise time of the March 22 payment, and it is possible that Ms. Mitchell made the payment sometime after the search, the district court's finding that Ms. Mitchell abandoned the room and its contents is not clearly erroneous. In light of Ms. Villa's claim that Ms. Mitchell checked out of the motel, the only alternative explanation for the discrepancy between Ms. Villa's testimony and the ledger is that Ms. Villa was confused or lying in her statement to the court. The district court found that Ms. Villa was a more credible witness than Ms. Mitchell, and "[t]his court defers to the district court when reviewing the credibility of the witness on whose testimony it relies in making its factual findings." *United States v. Sarracino*, 340 F.3d 1148, 1173 (10th Cir. 2003) (internal quotation marks omitted). Consequently, we do not find clear error in the district court's decision to accept Ms. Villa's testimony, and find that Ms. Mitchell had abandoned the motel room and its contents prior to the search.

**B**

The government argues that even if this Court were to hold that Ms. Mitchell had a reasonable expectation of privacy in Room 266 at the time of the search, the district court's order denying her motion to suppress should still be upheld under the apparent authority doctrine set forth in *Illinois v. Rodriguez*, 497 U.S. 177 (1990). Although the district court did not reach the issue of apparent authority, it is clear from the record that when the troopers searched Room 266, they reasonably believed that the room was unoccupied. We therefore note that the apparent authority doctrine provides an alternative basis for affirming the district court's order.

As the Supreme Court explained in *Illinois v. Rodriguez*, an otherwise illegal search is considered lawful if "the facts available to the officer at the moment [of the search would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriguez*, 497 U.S. at 188 (internal quotation marks omitted). Although the district court did not rule on whether the troopers had apparent authority to search the room, it made a factual finding that the troopers "were told that the room had been vacated [and t]hat was their reasonable understanding when they searched the room." Order Den. Def.'s Mot. to Suppress 6. The reasonableness of the troopers' belief in the

consenting party's authority is a question of law that we review de novo.

*Kimoana*, 383 F.3d at 1222.

In this case, if the troopers reasonably believed the motel clerks had authority to consent to the search of Room 266, then the search was lawful even if Ms. Mitchell was still occupying the room. Ms. Mitchell argues that the troopers should have realized the room was still occupied when they entered and saw that it was "full" of personal items. We agree with the district court, however, and find that a man of reasonable caution in these circumstances would believe that the occupants of Room 266 had checked out of the motel. Trooper Martin was told once over the phone (probably by Ms. Villa) and twice in person (probably by Ms. Mabey) that the occupant of Room 266 had checked out of the motel. Trooper Hicks then "reconfirmed" that the room was unoccupied by asking the clerk, "So she's not in the room? She's checked out? She's paid?," to which she responded "Yes." R. Vol. II 63. Moreover, the troopers had reason to believe that the previous occupant left the motel quickly to avoid the police,[2] which could explain why there were still personal belongings in the room. While it is true that "where an officer is presented with ambiguous facts related to authority, he or she

---

[2]The troopers who searched her room were following up on a possible stolen vehicle, and Ms. Villa told Trooper Martin that "when [the occupant of Room 266 was] told that the Dodge had been impounded, she . . . checked out of the room and left in another vehicle." R. Vol. II 44.

-19-

has a duty to investigate further before relying on the consent," *Kimoana*, 383 F.3d at 1222, given what was known to the troopers at the time of the search, they had no reason to doubt the motel clerk's assurances. The troopers reasonably believed that Room 266 was unoccupied, and therefore had apparent authority to search the room based on the motel clerk's consent.

## II

The district court sentenced Ms. Mitchell to ten months in prison and a thirty-six month term of supervised release. As a special condition of Ms. Mitchell's supervised release, the district judge ordered that she remain current in her restitution payments owed from her two prior federal convictions, which amount to more than $19,000. Ms. Mitchell argues that the district court has no authority to order her to pay restitution to persons other than the victims of the offense for which she was being sentenced. Because Ms. Mitchell did not raise this objection at the sentencing hearing, we review for plain error. *United States v. Fabiano*, 169 F.3d 1299, 1307 (10th Cir. 1999).

"Federal courts possess no inherent authority to order restitution, and may only do so as explicitly empowered by statute." *United States v. Nichols*, 169 F.3d 1255, 1278 (10th Cir. 1999). Under 18 U.S.C. § 3583(d), courts may order a defendant to pay restitution as a condition of supervised release, but only "to a

victim of the offense." 18 U.S.C. § 3563(b)(2). As the language of this statute suggests, a restitution award "is authorized only for losses caused by conduct underlying the offense of conviction." *United States v. Brewer*, 983 F.2d 181, 183–84 (10th Cir. 1993). Ms. Mitchell argues that the district court exceeded its authority by requiring her to remain current on restitution payments owed to the victims of her previous, unrelated federal crimes as a condition of her supervised release.[3]

Because the district court did not order restitution in this case, we find Ms. Mitchell's argument unconvincing. The $19,000 Ms. Mitchell owed to the victims from her previous crimes had already gone to judgment.[4] The district court merely required Ms. Mitchell to remain current in her restitution payments owed from the prior convictions as a condition of her supervised release for this conviction. It did not alter the amount owed by Ms. Mitchell or change the payment schedules set forth in those previous judgments. The district court did no more than insist that she comply with preexisting court orders, which is simply

---

[3]Ms. Mitchell argues that the district court exceeded "the restitution authority granted by 18 U.S.C. § 3651." Def. Br. 13. Section 3651 was repealed effective November 1, 1987. We treat her argument as if she had cited 18 U.S.C. §§ 3583(d) & 3563(b)(2), which are the statutes that allow courts to order restitution as a condition of supervised release.

[4]*See United States v. Mitchell*, No. 2:99-CR-00352 (D. Utah filed Feb. 1, 2000); *United States v. Mitchell*, No. 2:00-CR-00024 (D. Utah filed Jul. 10, 2000, amended Feb. 21, 2001).

a requirement that she obey the law, not an order of restitution. *Cf. United States v. Hatchett*, 918 F.2d 631, 644 (6th Cir. 1990) (holding that "conditioning probation on the payment of 'all back taxes'" was not equivalent to "ordering restitution" because "[t]he district court did no more than insist that [defendant] comply with the law").

The district court's authority to impose conditions on Ms. Mitchell's term of supervised release derives from 18 U.S.C. § 3583(d).[5] Although "[d]istrict courts have broad discretion to fashion conditions of supervised release," *Fabiano*, 169 F.3d at 1307, the conditions must be "reasonably related" to one or more of the following four factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) deterring criminal conduct; (3) "protect[ing] the public from further crimes of the defendant"; and (4) providing the defendant with needed training, medical care,

---

[5] 18 U.S.C. § 3583(d) CONDITIONS OF SUPERVISED RELEASE.– . . . The court may order, as a further condition of supervised release, to the extent that such condition--

    (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

    (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

    (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate.

or other correctional treatment.  18 U.S.C. § 3583(d)(1), and §§ 3553(a)(1), (2)(B)–(D);[6] *United States v. Barajas*, 331 F.3d 1141, 1146–47 (10th Cir. 2003). Additionally, a valid condition of supervised release "involves no greater deprivation of liberty than is reasonably necessary" and must be "consistent with any pertinent policy statements issued by the Sentencing Commission."  18 U.S.C. §§ 3583(d)(2)–(3).

We find that the district court properly exercised its authority under 18 U.S.C. § 3583(d) when it required Ms. Mitchell to remain current on her restitution payments from previous criminal convictions as a condition of supervised release.  The nature and circumstances of her offense—possession of checks stolen out of the United States mail—are nearly identical to the two prior federal convictions for which restitution is owed.  The district court found that Ms. Mitchell's history and characteristics indicate that she "is likely to continue

---

[6]18 U.S.C. § 3553(a) FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.—  . . . The court, in determining the particular sentence to be imposed, shall consider--
- (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
- (2) the need for the sentence imposed--
. . .
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant; and
- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

her activity of dealing stolen mail, forged checks, and is likely to continue her drug use." R. Vol. III 8. By insisting that Ms. Mitchell comply with her previous restitution orders, the court was helping to deter future criminal conduct by depriving Ms. Mitchell of any monetary profit from her prior acts of mail theft and forgery. Moreover, because Ms. Mitchell was already legally obligated to pay the restitution from her previous convictions, the challenged condition of supervised release is not a "deprivation of liberty." Finally, Ms. Mitchell does not identify, and we cannot find, any inconsistencies between the requirement that she comply with her preexisting restitution orders and the Sentencing Commission's policy statements related to conditions of supervised release. *See* USSG §5D1.3, p.s. Consequently, we find that the district court did not commit plain error in imposing the condition.

## III

We **AFFIRM** the conviction and sentence imposed by the district court.