**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 17 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MATTHEW J. BEAUDRY;
KEITH PISCHKE,

      Plaintiffs-Appellants,

v.

CORRECTIONS CORPORATION OF
AMERICA, a Tennessee Corporation;
ARCHIE WELCH, VINCENT
SCOTT, BRETT MARRIOTT,
GARY HALL, and JERRY SMITH,
Corrections Officers; STEVE
WILSON; SCOTT EATON,

      Defendants-Appellees,

   and

RICK HUDSON, Warden;
JOHN DOES, Employees/Personnel,

      Defendants.

No. 02-6073

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. Nos. 99-CV-910-M and 01-CV-604-M)

---

Submitted on the briefs:

Matthew J. Beaudry, Pro Se, for Plaintiffs-Appellants.

Darrell L. Moore, Pryor, Oklahoma, for Defendants-Appellees.

---

Before **SEYMOUR** , **HENRY** , and **BRISCOE** , Circuit Judges.

---

**PER CURIAM** .

---

Introduction

Plaintiffs, two inmates of the Wisconsin Department of Corrections, brought a claim under 42 U.S.C. § 1983 seeking damages for the alleged violation of their rights under the Eighth Amendment stemming from injuries sustained when defendants locked them in their cells and sprayed them with tear gas during a riot at the North Fork Correctional Facility (NFCF) in Sayre, Oklahoma.  In addition to their § 1983 claim, plaintiffs also requested declaratory and injunctive relief and brought a state-law tort claim of assault and battery.  Defendants are Corrections Corporation of America, Inc. (CCA) the owner and operator of NFCF, and certain of its employees.  The district court dismissed plaintiffs' § 1983 claim prior to trial for failure to exhaust administrative remedies.  A jury later found for defendants on the assault and battery claim.

On appeal, plaintiffs argue that the district court erred in dismissing their § 1983 claim for failure to exhaust and contend that the court should have given particular jury instructions in the subsequent trial.  Plaintiffs also raise questions

-2-

about the performance of their appointed counsel. [1] After reviewing the parties'

briefs, the record, and the applicable law, we affirm. [2]

Dismissal of § 1983 Claim for Failure to Exhaust Administrative Remedies

Although plaintiffs' opening brief raises serious issues about the

application of the Prison Litigation Reform Act of 1995 (PLRA) to private

defendants, the majority of plaintiffs' PLRA-related issues were not raised in the

district court. We will therefore not consider whether PLRA applies to private

prisons nor plaintiffs' sub-issues–whether a private prison can be considered an

"institution" under PLRA, and whether a private prison grievance procedure can

be considered an "available remedy" for purposes of 42 U.S.C. § 1997e(a).

*See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (noting

general rule that issues not raised in the district court will not be considered on

appeal). We decline to make an exception to this rule as urged by plaintiffs.

---

[1] An issue arose in this case as to the timeliness of plaintiffs' notice of appeal. After review of the record and the parties' jurisdictional briefs, we conclude that the notice of appeal may be considered timely under the prison mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that pro se prisoner's notice of appeal deemed filed when delivered to prison officials for forwarding to the district court). Because the date on the face of the notice of appeal raises an inference that plaintiffs relinquished control over the document on January 3, 2002, the notice of appeal will be considered as timely filed.

[2] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

*See Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1386 (10th Cir. 1997) (noting deviation from the rule "only in the most unusual circumstances, which may include issues regarding jurisdiction and sovereign immunity, instances where public interest is implicated, or where manifest injustice would result" (quotation omitted)).

Plaintiffs did, however, preserve one PLRA-related issue for appeal by raising it in the hearing on exhaustion, alluding to it in their opening brief, and developing it more fully in their reply brief: namely whether plaintiffs actually had an "available remedy" even though defendants' grievance procedures specifically listed "State and Federal court decisions" and "State and Federal laws and regulation[s]" as "non-grievable matters." *See* R., Doc. 105, Ex. A at 2.[3] In analyzing this issue, we will assume, without deciding, that PLRA applies to private prisons.

---

[3] Although this court generally does not review issues raised for the first time in a reply brief, *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000), we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the appellee's brief, *see Sadeghi v. INS*, 40 F.3d 1139, 1143 (10th Cir. 1994). In their answer brief, defendants contend that plaintiffs failed to raise PLRA-related arguments in the district court. We will thus address the available remedies argument even though it is only fully presented in plaintiffs' reply brief.

Before suing over prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1917e(a). [4] As noted above, in their complaint plaintiffs state a § 1983 claim for damages stemming from the alleged violation of their rights under the Eighth Amendment and a state-based claim for tort damages from assault and battery. At the exhaustion hearing, plaintiffs explained that they did not file a prison grievance because they understood that the claims put forth in their complaint were "non-grievable" under prison policy. Thus, plaintiffs argue, they had no "available remedy" and were not required to exhaust via the prison grievance procedure.

In *Booth v. Churner*, 532 U.S. 731 (2001), decided while this case was pending in the district court, the Supreme Court determined that a prisoner seeking only money damages must exhaust prison administrative remedies where the prison process could provide some relief but could not provide the money damages demanded. *Id.* at 734. Stated another way, the Court examined "whether or not a remedial scheme is 'available' where . . . the administrative process has authority to take some action in response to a complaint, but not

---

[4]     The pertinent part of 42 U.S.C. § 1917e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

the remedial action an inmate demands to the exclusion of all other forms of redress." *Id.* at 736.

At the outset of its opinion in *Booth*, the Court noted that it was assuming "that some redress for a wrong is presupposed by the statute's requirement of an 'available' 'remedy.'" *Id.* Neither party in *Booth* had argued "that exhaustion is required where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Id.* The Court noted in a footnote: "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Id.* n.4. Plaintiffs argue that, because matters involving state and federal law and regulations were "non-grievable matters" under prison procedures, they are like the hypothetical inmate referred to in *Booth* with nothing to exhaust. Plaintiffs fail, however, to appreciate the import of their complaint taken as a whole.

In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation. *Id.* at 737. The Court further noted that exhaustion potentially filters out frivolous claims and ultimately clarifies the contours of the controversy in cases that eventually reach the courts.

*Id.* In this case, these policy reasons are particularly pertinent. Plaintiffs' complaint requested not only money damages but also "injunctive" relief in the form of adequate weapons training for defendants' employees, medical attention to inmates injured in the gassing incident, and decontamination of affected areas of the prison. While this prayer for relief is couched as a request for various injunctions, we think this is exactly the type of situation to which the Court in *Booth* was referring when it outlined the benefits of exhaustion. "[E]xhaustion in these circumstances would produce administrative results that would satisfy at least some inmates who start out asking for nothing but money, since the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket." *Id.* at 737. Further, "[i]n come instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (citing *Booth*, 532 U.S. at 737). Plaintiffs' demands for weapons training for corrections officers, medical care, and decontamination are all matters which the prison administration could affect. Even though matters involving federal and state law and regulation were "non-grievable" under prison policy, the fact that prison authorities did have the power to render some of the relief requested by plaintiffs puts this case squarely within the ambit of *Booth*. Plaintiffs were required to exhaust their administrative

remedies before bringing their § 1983 claim, and the district court was correct in so holding. [5]

Jury Instructions

Plaintiffs next argue that the district court should have given a "missing evidence" instruction allowing the jury to infer that certain evidence not produced by defendants, specifically video footage of the gassing incident and incident

---

[5] Plaintiffs cite *Basham v. Uphoff*, No. 98-8013, 1998 WL 847689, at *4 (10th Cir. Dec. 8, 1998), an unpublished decision from this court, to argue that they alleged exhaustion in their complaint with sufficient specificity to avoid dismissal on that ground. In *Basham*, however, this court was reviewing a sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(b) made solely on the basis of the pleadings and before any proof on the exhaustion issue had been offered. Under those circumstances, we agreed with the Fifth Circuit that because "'[d]ismissal under § 1997e is made on pleadings without proof[, a]s long as the plaintiff has alleged exhaustion with sufficient specificity, lack of admissible evidence in the record does not form the basis for dismissal.'" *Id.* (quoting *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)). Here, the decision on exhaustion was made on the eve of trial and only after a full hearing in open court. At that stage of the proceedings, once defendants raised the exhaustion issue, the court quite properly addressed it, considering all available evidence. The holding in *Basham* has no application to this circumstance.

Nor are we persuaded that the district court erred in not finding that defendants had waived their exhaustion defense by waiting so late to raise it. The statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court was not authorized to dispense with it. *See Beharry v. Ashcroft*, No. 02-2171, 2003 WL 1989608, at *5 (2d Cir. May 1, 2003) (applying *Booth* and explaining the difference between statutory and judicial or "common law" exhaustion doctrine); *see also Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) (noting that when defendants assert their rights under § 1997e(a), "the judge must address the subject immediately").

-8-

statements from officers on the scene, would have been unfavorable to defendants. They also argue that the jury instructions on the standard for reckless disregard for the rights of others, to be applied as a preliminary matter to the consideration of whether to award punitive damages, should have been given with regard to all defendants, not just defendants CCA and Welch. They argue further that the "reckless disregard" instruction should have allowed the jury to consider whether defendants alternatively acted intentionally and with malice toward plaintiffs. Because plaintiffs did not raise any of these jury instruction issues in the district court, our review is for plain error. *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999).[6]

Under the plain error standard, plaintiffs "must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *United States v. Fabiano*, 169 F.3d 1299, 1303 (10th Cir. 1999) (quotation and citation omitted). Under this standard, we may correct an error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732

---

[6] While plaintiffs did propose the instructions they now urge should have been used, they did not apparently explain to the court their objections to the instructions as given. Merely tendering proposed instructions to a court is insufficient to comply with the strictures of Fed. R. Civ. P. 51 which require that a party objecting to the giving or failure to give a particular instruction must state "distinctly the matter objected to and the grounds of the objection." *Pena v. Leombruni*, 200 F.3d 1031, 1035 (7th Cir. 1999).

(1993)). "[W]e view [instructions] as a whole to determine whether the jury may have been misled, upholding the judgment in the absence of substantial doubt that the jury was fairly guided." *Id.* (quoting *United States v. Wiktor*, 146 F.3d 815, 817 (10th Cir. 1998)).

With regard to the missing evidence instruction, this court has held that, absent a showing of bad faith, failure to produce evidence is not sufficient to warrant such an instruction. *See Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir. 1985). The only allusion here to bad faith is plaintiffs' statement in their opening brief that "[i]n cases in which discovery was sufficiently pointed and vigorous by one party and thwarted by the stonewalling tactics of the opposing party; [sic] the requirement of a 'missing evidence' jury instruction should be made mandatory." Aplt. Opening Br. at 18. Plaintiffs point to no evidence in the record to substantiate this implicit charge of bad faith. Under these circumstances, the district court's refusal to give a missing evidence instruction was not plain error.

As to the precise contours of the tendered instruction regarding reckless disregard of plaintiffs' rights, we note that this instruction would not have even come into play unless the jury had first decided to award plaintiffs actual damages. Because the jury did not award actual damages, it never had an

occasion to consider this instruction. There can be no plain error in this circumstance.

Assistance of Counsel

Plaintiffs contend that their trial counsel withdrew from the case without first notifying them and without either filing post-trial motions or informing them of the opportunity for them to do so. We are unsure what plaintiffs want from this court regarding this matter. In their opening brief, plaintiffs state, "this Honorable Court must decide if counsel failed to object to the district court on not providing a 'missing evidence' instruction and failed to file the proper after verdict motions for Plaintiffs before withdrawing." *Id.* at 20. While we assume plaintiffs are attempting to bring some sort of ineffective assistance of counsel charge, we note that plaintiffs have no Sixth Amendment right to counsel in a civil case. *See Cullins v. Crouse*, 348 F.2d 887, 889 (10th Cir. 1965). Counsel's performance, however deficient, would not therefore form the basis for reversal of the trial court.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.