FILED
United States Court of Appeals
Tenth Circuit

March 9, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HENRY MORGAN SMITH; DESIREE
SMITH,

      Plaintiffs-Appellants,

v.

BOARD OF COUNTY
COMMISSIONERS FOR THE COUNTY
OF CHAVES, NEW MEXICO;
Commissioner MICHAEL TRUJILLO,
individually and in official capacity;
Commissioner KIM CHESSER,
individually and in official capacity;
Commissioner KYLE D. WOOTEN,
individually and in official capacity;
RICHARD C. TAYLOR, individually and
in official capacity; GREG NIBERT,
individually and in official capacity;
Chaves County Sheriff JAMES COON,
individually and in official capacity;
Chaves County Deputy BARRY DIXON,
individually and in official capacity;
Chaves County Deputy SHANE BAKER,
individually and in official capacity;
Chaves County Deputy JAMES MASON,
individually and in official capacity;
Chaves County Deputy JASON TUTOR,
individually and in official capacity;
Chaves County Deputy SCOTT
OUILLETTE, individually and in official
capacity,

      Defendants-Appellees.

No. 11-2205
(D.C. No. 1:09-CV-00026-LH-DJS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **MCKAY** and **HOLMES**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Plaintiffs Henry Morgan and Desiree Smith, proceeding pro se, have appealed the district court's orders dismissing their claims for violation of their constitutional and civil rights by members of the Chaves County police force and Board of Commissioners. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I.**

The Smiths' amended complaint alleges the following facts. See Aplt. App. at 193–98 (Plaintiffs' Amended Complaint). On Saturday, December 2, 2006, at about two in the morning, the Smiths came home to find a suspicious vehicle parked across the highway from their house, with a man sitting in the driver's seat. Someone else ran across the highway and got into the passenger side, and the vehicle sped away. Mr. Smith

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

called law enforcement and told the dispatcher what he had seen. He provided the car's license plate number and mentioned that the house next door to the Smiths was vacant.

A few minutes later, the Smiths' fourteen-year-old son pointed out to his parents that someone was walking around the vacant house with a flashlight. Mr. Smith called the dispatcher again to report this activity, unaware that the person next door was an officer who had been sent in response to his call. The dispatcher asked Mr. Smith if he wanted to be contacted by the police, and he said that he did.

Mr. Smith and his son then went outside, where three deputies of the Chaves County Sheriff Department yelled to them. The deputies explained that they had checked the neighboring property but found no evidence of a break-in. Mr. Smith and his son went back inside their house, and the deputies returned to their patrol cars.

A few minutes later, two of the deputies knocked on the Smiths' front door. At the door, Deputy James Mason asked Mr. Smith whether he was a convicted felon, and he replied that he had been convicted of a felony about twenty-five years earlier. Deputy Mason then asked him if he had a firearm, and he replied that his wife did.[1] Mr. Smith explained that his right to have a gun had been restored under New Mexico law ten years

---

[1] An affidavit Mr. Smith provided later helps explain this interaction. In his second call to the dispatcher, Mr. Smith mentioned that he would go outside to "keep an eye on what was going on." Aplt. App. at 226. When the dispatcher told him to be careful, he said that the Smiths "did in fact have a weapon for protection." Id. This information was apparently conveyed to the responding officers. Mr. Smith also stated in his affidavit that Deputy Mason knew he was a convicted felon because the officer had run a background check on him during a traffic stop six months to a year earlier. Id. at 228.

after his conviction.

Deputy Mason told Mr. Smith that the passage of time was irrelevant under federal law, and that the deputies would be taking the gun to turn over to federal authorities. At about this time, the deputies drew their weapons, and two other deputies approached the front door, aiming guns at Mr. Smith or in his general direction. Mr. Smith saw a fifth deputy with a gun at the street. Deputy Mason told Mr. Smith that he would be "put down" if he did not turn the firearm over to them.

Fearing for the safety of his family, Mr. Smith asked his son to retrieve the weapon from a locked closet in the bedroom. Mr. Smith's son brought Deputy Mason a .38 caliber revolver in a zippered case.[2] Deputy Mason confiscated the pistol and informed Mr. Smith that he was going to have him prosecuted for being a felon in possession of a firearm. The deputies left without arresting Mr. Smith.

## II.

The Smiths brought this action against the Chaves County Board of Commissioners; Commissioners Michael Trujillo, Kim Chesser, Kyle D. Wooten, Richard C. Taylor, and Greg Nibert; Chaves County Sheriff James Coon; and Chaves County Deputies Barry Dixon, Shane Baker, James Mason, Jason Tutor, and Scott Ouillette. The Smiths alleged six counts. See Aplt. App. at 199–205.

In Count I, they alleged that Defendants violated the Smiths' Fourth Amendment

___

[2] Defendants acknowledge that the firearm was fire damaged and not in working order. Aplt. App. at 1259 (Defs.' Mot. S.J. of Sept. 6, 2011).

4

rights to be free from unlawful entries, searches and seizures, and excessive force when the deputies came onto the Smiths' property without a warrant, threatened them, and demanded Ms. Smith's pistol. In Counts II, III, and IV, they alleged that Defendants' actions violated the Fifth and Fourteenth Amendments and the Smiths' civil rights under 42 U.S.C. § 1985. Finally, in Counts V and VI, they asserted claims under the New Mexico Torts Claims Act (NMTCA) for abuse of process and violation of due process and the Smiths' right to bear arms under New Mexico law and the Second Amendment.

## A.

The Defendants brought several Rule 12(b)(6) motions to dismiss the Smiths' complaint on the basis of qualified immunity and other grounds. In a Memorandum Opinion and Order entered on February 10, 2010, the court dismissed Counts II, III, IV, V, and VI. Id. at 364–65 (Mem. Op. & Order of Feb. 10, 2010).

With regard to Count I, the court dismissed only the claim that Defendants violated the Fourth Amendment by coming onto the Smiths' property without a warrant. Id. The court explained that "[w]hen an area is accessible to the public, not shielded from view, [and] appears to be the principal entrance to the house . . . entry does not violate the Fourth Amendment." Id. at 352. While the curtilage of the home is a protected area, the Smiths "d[id] not allege that there was a fence around their property or that there were any other indications that they had a reasonable expectation of privacy in the area leading up to their front door." Id. "Even though [the Smiths] did not specifically grant the police permission to enter the property," the court concluded, "the police did not violate

5

the law merely by approaching and knocking on their front door." Id.

Nonetheless, the district court denied Defendants' motion as to the remainder of the Smiths' Fourth Amendment claim. The court reasoned that the Smiths stated a Fourth Amendment claim because, "[a]lthough the deputies themselves did not personally search [the Smiths'] home and take the firearm out of the home, the command, at gunpoint, that Mr. Smith relinquish the firearm that was in the home amounted to a search and seizure." Id. at 354 (citing United States v. Reeves, 524 F.3d 1161, 1168 (10th Cir. 2008); Holland v. Harrington, 268 F.3d 1179, 1187–88 (10th Cir. 2001); United States v. Maez, 872 F.2d 1444, 1450 (10th Cir. 1989)). The court determined that, based on the allegations in the complaint, no exigent circumstances justified the warrantless search and seizure. Id. at 354–55.

**B.**

Defendants filed another motion to dismiss and asked the court to reconsider part of its denial of the last motion. In a Memorandum Opinion and Order entered on August 23, 2010, the court granted Defendants' motion in part and denied it in part. Id. at 508 (Mem. Op. & Order of Aug. 23, 2010). The court dismissed all claims against the Board of County Commissioners for Chaves County and the individual commissioners, and against the five defendant deputies in their official capacities. Id.

The court also dismissed the Smiths' claims for unlawful detention or arrest and excessive force. Id. Defendants acknowledged that Mr. Smith's "detention under gunpoint may be considered an arrest." Id. at 488. But the court concluded that when the

6

deputies drew their weapons, Mr. Smith was standing in a public place for Fourth Amendment purposes—his open doorway—and the deputies had probable cause to believe that he was a felon in possession of a firearm in violation of federal law. Id. at 490–91. The court further concluded the deputies "had reason to believe that Mr. Smith might be armed and dangerous to justify drawing and pointing their weapons out of concern for officer safety while they continued their investigation." Id. at 494–95.

Again, however, the court refused to dismiss the Smiths' Fourth Amendment claim entirely. "Although the deputy defendants did not themselves enter the home," the court explained, "Deputy Mason ordered Mr. Smith to give him the gun while the other deputies held him at gunpoint. Mr. Smith's decision to have his son get the gun and give it to them was not voluntary and amounted to a warrantless seizure of the firearm in the home." Id. at 497 (citing United States v. Flowers, 336 F.3d 1222, 1226 n.2 (10th Cir. 2003)).

The district court rejected Defendants' arguments that exigent circumstances or the plain-view doctrine justified their seizure of the pistol. The district court concluded that once Mr. Smith was safely detained in the doorway, no exigent circumstances justified the deputies' warrantless constructive entry into the home to get the gun. "Any concern that any of the other occupants of the home might use the firearm is belied by the allegation that the deputy defendants allowed one of the other occupants to get the firearm and bring it to them—actions no reasonable officer would allow if genuinely concerned for his and his fellow officers' safety." Id. at 499. "The deputy defendants, under the

7

facts presented in the complaint, did not have a lawful right of access to the firearm without a warrant or exigent circumstances," and the plain-view doctrine was inapplicable because they "did not observe the firearm first-hand." Id. at 500. Because the foregoing was clearly established law, the court ruled that the deputy defendants, in their individual capacities, were not entitled to qualified immunity and denied their motion to dismiss as to the seizure of the pistol.

The Smiths filed a motion for reconsideration, in which they disagreed with the court's dismissal of their unlawful entry claim and argued that the court had misunderstood the facts. Id. at 518. Specifically, they asserted that "it was clearly established that this property was fences [sic] and had numerous 'No trespassing, private property['] signs mounted in full accordance with [N]ew Mexico law." Id. The court denied the motion, noting that the Smiths "ask[ed] the Court to consider new facts not pled in the Amended Complaint." Id. at 581 (Mem. Op. & Order of Nov. 9, 2010).

## C.

On September 6, 2011, Defendants moved for summary judgment, which the district court granted. The court framed the remaining qualified immunity issue as follows: "[W]here Defendants had probable cause to secure a warrant to seize a firearm in a suspect's home and where officer safety concerns were present that justified seizing the suspect at gunpoint in his doorway without a warrant, [could] a reasonable officer . . . have believed that ordering the suspect at gunpoint to retrieve the firearm from the home and turn it over to the officers was lawful without a warrant, in light of clearly established

8

law and the information the officers possessed"? Id. at 1319–20 (Mem. Op. & Order of Sept. 20, 2011). The court acknowledged that it had previously resolved this question in favor of the Smiths. Id. at 1320. It re-analyzed the issue, however, and concluded this time that Defendants were entitled to qualified immunity. Id. at 1320–21. Accordingly, the court granted summary judgment for Defendants on the Smiths' last remaining Fourth Amendment claim. Id. at 1322.

### III.

We begin our analysis by stating the issues we do and do not reach on this appeal. In their brief, the Smiths make a broad request that we "overturn all or part of the Orders of the Court because Plaintiffs feels [sic] that the Court has erred either purposely or mistakenly as to the exact facts of Plaintiffs['] case." Aplt. Br. at 1. Nonetheless, the Smiths only offer an argument as to one of the district court's substantive rulings—they contend that the district court erred in concluding that the officers acted lawfully when they initiated contact with Mr. Smith at front door of the family's home. See id. at 11 ("Plaintiffs would like to ask this appeal court and the justices to overturn the Judge's rulings which legalized the second contact of the Deputies at the front door."). In addition, we construe their brief as challenging the district court's denial of the Smiths' motions to appoint counsel and the court's imposition of sanctions on the Smiths. Id. at 13–14.

The Smiths do not, however, argue that the district court erred in holding that the officers reasonably believed they could lawfully detain Mr. Smith at gunpoint in his

9

doorway and order him to turn over the firearm that was in his home.  Accordingly, we do not review the district court's ruling on that issue.  We construe liberally the appellate briefs of litigants proceeding pro se, Cummings v. Evans, 161 F.3d 610, 613 (10th Cir. 1998), but we do not craft their legal arguments for them, Whitney v. State of New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997).  The issues the Smiths argue are the ones we will address.

### A.

We review de novo the district court's grant of Defendants' motion to dismiss with regard to the legality of the deputies' entry onto the Smiths' property.  Aplt. App. at 352 (Mem. Op. & Order of Feb. 10, 2010); Christensen, 554 F.3d at 1275.  Taking all of the facts in the Smiths' complaint to be true and construing that pleading liberally, we conclude that the district court did not err on this issue.

The Smiths acknowledge that Mr. Smith specifically asked the 911 dispatcher to have the deputies contact him.  They argue at length, however, that the once the officers had spoken with Mr. Smith outside his home, no further contact was called for.  The Smiths insist that the second contact—when Deputy Mason and another deputy came and knocked on their front door—was unconstitutional because "any additional contact should have only been warranted by a search warrant or a complaint."  Aplt. Br. at 11.  But that is not the law.  If the Smiths' front door was openly visible and accessible to the public,

10

the deputies in this case did not need a warrant or probable cause to approach it.[3]

If, on the other hand, the Smiths' door was not accessible, they had to allege facts to that effect. United States v. Cavely, 318 F.3d 987, 994 (10th Cir. 2003). And although the Smiths mention the existence of fences and "no trespassing" signs on their property in their brief on appeal (as they did in a motion for reconsideration), the amended complaint contains nothing suggesting that the police—like mail carriers, pizza deliverers, and door-to-door evangelists—were not free to approach their door.[4] See Kentucky v. King, 131 S. Ct. 1849, 1862 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."). Even for a pro se litigant, we "will not supply additional factual allegations to round out a plaintiff's complaint." Whitney, 113 F.3d at 1173–74. Based on the Smiths' amended complaint, which is what we consider for purposes of a motion to dismiss, it was not

_____

[3] See, e.g., United States v. Cruz-Mendez, 467 F.3d 1260, 1265 (10th Cir. 2006) ("Mr. Cruz-Mendez first contends that the officers lacked reasonable suspicion for the initial approach to the apartment to conduct a so-called 'knock and talk' investigation. But reasonable suspicion was unnecessary."); United States v. Carter, 360 F.3d 1235, 1239 (10th Cir. 2004) (concluding that the Fourth Amendment was not implicated where officers walked onto defendant's driveway at midnight and shined flashlights into a car); United States v. Hatfield, 333 F.3d 1189, 1194 (10th Cir. 2003) ("When the police come on to private property to conduct an investigation . . . and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." (quotation omitted)).

[4] We note, as an aside, that the Smiths direct our attention to an "attached picture of the Smiths['] home" which, they say, shows fencing and signs. Aplt. Br. at 10. We received no such picture with the Smiths' brief, but even if we had, we do not ordinarily consider evidence submitted for the first time on appeal. Nulf v. Int'l Paper Co., 656 F.2d 553, 559 (10th Cir. 1981).

11

unconstitutional for the deputies to approach the Smiths' door and knock.

The constitutionality of what happened after they knocked is a separate matter,[5] which we do not address. Although we construe the Smiths' pro se appellate brief liberally, we will not reach issues that are not argued to us. Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007). And even under the most charitable reading we can provide, the Smiths simply do not ever argue that the district court erred in holding that "it was not unreasonable for the officers to have believed that they could order at gunpoint Mr. Smith to relinquish the firearm without a warrant." Aplt. App. at 1320 (Mem. Op. & Order of Sept. 20, 2011). Therefore, we express no view as to the correctness of this holding.

## B.

The Smiths argue that the district court denied their motions for appointment of counsel even though they needed an attorney and ordered them to pay sanctions in an amount they cannot afford. We conclude that the district court did not abuse its discretion in declining to appoint counsel and that we lack jurisdiction to review the district court's award of attorneys' fees to Defendants.

We address first the district court's decision not to appoint counsel for the Smiths, which we review for abuse of discretion. Hill v. SmithKline Beecham Corp., 393 F.3d

---

[5] Cf. Cruz-Mendez, 467 F.3d at 1265 ("[T]he officers in this case did not need reasonable suspicion before knocking on Ms. Armenta's door with the intent to ask her questions. Whether any of their later actions constituted an unlawful search or seizure is the subject of the remainder of our discussion.").

12

1111, 1115 (10th Cir. 2004). As the Smiths recognize, they had no constitutional right to counsel in this civil case. Aplt. Br. at 13; Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1169 (10th Cir. 2003). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." Id. (quotation omitted). The Smiths' case no doubt could have been better presented with the help of a lawyer. But we do not think the district court abused its discretion in declining to appoint one.

Turning to the sanctions the district court imposed on the Smiths, we note that the court's final judgment dismissing the Smiths' case with prejudice was entered on September 21, 2011. Aplt. App. at 1323. The Smiths filed their notice of appeal on October 18, 2011. Id. at 1332–33. But the court's order determining that Defendants were entitled to an award of attorneys' fees was not filed until November 3, 2011, Aplee. Supp. App. at 22–33, and the award did not become final until the court set the amount the Smiths were required to pay on November 29, 2011, id. at 49–53. See Phelps v. Washburn Univ., 807 F.2d 153, 154 (10th Cir. 1986) ("[A]n award of attorney's fees is final for purposes of appeal only after the amount is determined."). "[A] supplemental notice of appeal is required for us to have jurisdiction over an attorneys' fees issue that becomes final subsequent to the initial notice of appeal." EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1250 (10th Cir. 1999). None was filed in this case. Accordingly, we lack jurisdiction over any challenge to the district court's award.

**IV.**

The district court's final judgment is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Chief Judge