**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRYAN SANDOVAL,

　　　　　Plaintiff - Appellee,

v.

STATE OF NEW MEXICO,

　　　　　Defendant - Appellant.

No. 14-2023
(D.C. No. 2:13-CV-00713-MCA-WPL)
(D. of N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.[**]

After being convicted in state court of several battery offenses, Bryan

Sandoval sued the state of New Mexico, alleging that certain deficiencies in the

jury instructions constituted violations of his Fourteenth Amendment rights to due

process and equal protection. The district court allowed Sandoval to pay his

filing fee in increments over time, and, at Sandoval's request, the district court

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

extended the first payment deadline. Twenty-one days after the extended deadline had lapsed, the district court still had not received a payment, and, as a result, it dismissed Sandoval's suit without prejudice. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the decision of the district court.

## I. Background

In New Mexico state court, Sandoval was convicted of battery on a healthcare worker and peace officer. He appealed his conviction, arguing that the jury should have been more thoroughly instructed on the knowledge element of the charged offenses. The New Mexico Court of Appeals affirmed his conviction.

Proceeding *pro se* while incarcerated at a New Mexico correctional facility, Sandoval brought the same argument before a federal court in the form of a 42 U.S.C. § 1983 claim. He contends the deficient jury instructions constitute violations of his rights to due process and equal protection.

Sandoval moved to proceed *in forma pauperis* pursuant to the Prison Litigation Reform Act (PLRA), which allows indigent petitioners to commence a civil proceeding without prepayment of fees. 28 U.S.C. § 1915. The district court granted the motion, allowing Sandoval to pay the filing fee in installments. After reviewing Sandoval's financial records, the district court ordered him to pay $9.46 of the filing fee before the court would proceed on the merits. That payment was due on October 25, 2013. Going forward, Sandoval was to make payments totaling twenty percent of his monthly income until the full $350 filing

fee had been paid. In its order, the district court warned Sandoval that failure to make any of these payments on time could result in dismissal of his case without prejudice unless he could show cause as to why the payment should be excused. *See Sandoval v. New Mexico*, No. 13-713 at *1 (D.N.M. Sept. 25, 2013).

Several days before the first payment deadline, Sandoval responded to the district court's order, indicating that, because he had been wrongfully placed in the segregation unit at the correctional facility, he was not earning income and therefore did not have any money in his account to make his first payment on time. The district court did not respond to this filing, but, by the time Sandoval next contacted the court approximately a month later, he had earned $90. Along with his financial statement, Sandoval submitted to the court a copy of his request that a money order be sent to the district court in the amount of $27.46, which would have covered his first two payments. Sandoval also submitted a handwritten but unsigned note purporting to inform him that his money order could not be processed because he had not paid for postage. Accordingly, Sandoval informed the court that he had attempted to transfer the money due but that there had been a problem with its transmission. At that time, he also informed the court that he was being transferred to a different correctional facility and needed to update his contact information.

Because of the logistical hurdles Sandoval had encountered when trying to submit his money order, a magistrate judge allowed him an additional twenty-one

days to make his payments, extending the deadline to January 6, 2014. Again, the magistrate judge warned Sandoval that failure to make timely payments could result in dismissal.

On January 13, Sandoval requested that the court extend the deadline for his first payment by nine days, as he had not yet received his first income payment since being transferred. He also noted that he was still in segregation and therefore had "been asking that I need my post-filing certificate filled out." Letter by Bryan Sandoval Regarding Motion for Removal of State Court Writ Proceeding at 1, Jan. 13, 2014. Eleven days later, before the court had responded to his request for an extension of time, Sandoval notified the court that he "had submitted a debit memo with the previous facility to have payment sent to this court." Notice of Change of Address by Bryan Sandoval at 1, Jan. 24, 2014.

Three days later, the district court, acting *sua sponte*, dismissed Sandoval's complaint for failure to comply with the court's order to make payments toward the filing fee. Finding that, according to Sandoval's financial records, he did have the ability to pay, the court determined that his failure to make timely payments or show cause as to why the payments should be excused warranted dismissal without prejudice.

Throughout the proceedings, Sandoval also thrice moved for court-appointed counsel. The district court denied Sandoval's first and second motion in the same order, finding Sandoval was sufficiently capable of representing

himself.  Later in the proceedings, Sandoval renewed his request for counsel,

reiterating several of his original arguments, and, again, the district court denied

the motion.

## II.  Analysis

Sandoval appeals the dismissal and the decision not to appoint an attorney.

We address each issue in turn.

### A.  *Payment of Fees*

Although civil plaintiffs are responsible for paying the full filing fee, the

court may allow indigent plaintiffs to pay in installments.  *See* 28 U.S.C. § 1915.

But, "[i]f a prisoner has the means to pay, failure to pay the filing fee required by

§ 1915(b) may result in the dismissal of a prisoner's civil action."  *Cosby v.

Meadors*, 351 F.3d 1324, 1327 (10th Cir. 2003).  We review for abuse of

discretion a district court's decision to dismiss a § 1983 suit on those grounds.

*See id.* at 1326.

In general, "before dismissing a prisoner's complaint for failure to comply

with an order regarding partial payments toward a filing fee, the district court

should ordinarily take reasonable steps to ascertain whether the prisoner

attempted to comply with the fee order by authorizing prison officials to withdraw

required payments."  *Id.* at 1331.

> This approach—requiring the court to learn before
> dismissal whether the prisoner is at fault for the
> nonpayment of the initial fee—is appropriate for several

reasons. First, it is consistent with the language of the PLRA, which directs courts to collect the initial partial filing fee only "when funds exist." Second, this approach recognizes the reality that prisoners have limited control over the processing of their inmate trust-fund withdrawals and rely on the custodial institution to transfer the funds. And third, requiring the district court to learn before dismissal why the fee has not been paid comports with our admonishment that, in the absence of contumacious conduct or a clear record of disobeying court orders, it is an abuse of discretion to dismiss without first firing a warning shot or imposing other lesser sanctions.

*Thomas v. Butts*, 745 F.3d 309, 312–13 (7th Cir. 2014) (citations and internal quotation marks omitted).

Accordingly, when we have upheld dismissals of prior lawsuits for a prisoner's failure to pay fees, the district court has generally conducted the inquiry necessary to determine that the failure is attributable to the prisoner's negligence or misconduct rather than circumstances beyond his control. *See, e.g.*, *Cosby*, 351 F.3d at 1332 (upholding dismissal where the plaintiff admitted he refused to sign withdrawal authorization forms); *Barnett v. Ray*, 320 F. App'x 823, 824 (10th Cir. 2009) (upholding dismissal where the prisoner claimed he was unable to pay but there were sufficient funds in his account); *Kouris v. Gurley*, 272 F. App'x 724, 726 (10th Cir. 2008) (upholding dismissal where the plaintiff claimed prison officials had refused to process his payments for a certain period of time but the court did not receive a payment even after that period had expired); *Love v. Werholtz*, 113 F. App'x 362, 363 (10th Cir. 2004) (upholding

dismissal when, without requesting an extension, the prisoner made his initial payment five months after the deadline); *Oliver v. United States*, 51 F. App'x 293, 295 (10th Cir. 2002) (upholding dismissal where the prisoner admitted that he had sufficient funds but had chosen not to pay because he believed the filing fee was unconstitutional); *Baker v. Suthers*, 9 F. App'x 947, 950 (10th Cir. 2001) (upholding dismissal because the prisoner had spent the required funds at the prison commissary); *contra Kennedy v. Reid*, 208 F. App'x 678, 680 (10th Cir. 2006) (upholding dismissal when the prisoner failed to enter into the record evidence of the prison official's alleged refusal to process his money order).

In his January 14 and 24 filings, Sandoval made three arguments for an extension of time, all alleging that circumstances beyond his control prevented him from making payments.

First, he argued that he had not yet received his inmate pay. But the record reveals that Sandoval had $90 in his account in November 2013, well after the district court had notified him his first payment was due. Thus, either Sandoval still had access to that money in January or he had spent it elsewhere without any attempt to justify that expenditure. Either way, the district court did not abuse its discretion in declining to extend the deadline until after Sandoval had received another income payment. *See Cosby*, 351 F.3d at 1327 ("But when a prisoner has sufficient income to pay a monthly partial filing fee and instead spends his money

on amenities at the prison canteen, he cannot be excused for failing to make the required partial payments.").

Second, Sandoval argues that his first attempt to submit a money order, which was returned to him for postage, should constitute an attempt to comply with the fee order sufficient to warrant reversing dismissal. This attempt prompted the magistrate judge to extend the original deadline, but it does not offer us any information about whether Sandoval made any effort to comply with the revised deadline. Thus, Sandoval's references to his request that a payment be made while he was at his original prison did not warrant further accommodation from the district court.

Third, Sandoval alleges that, because he was still in segregation after he was transferred, he depended on prison staff to fill out and submit his money order and he had been asking for their help. Sandoval elaborates on appeal, claiming he "tried to take steps necessary to pay initial partial payment but prison officials failed to act on requests." Aplt. Br. at 4.[1] But this vague and conclusory argument was never presented to the district court. Moreover, the district court had already determined that Sandoval had access to the necessary funds and

_____

[1] The bulk of Sandoval's brief primarily focuses on the nature of his underlying claim. Although only one line of his brief is relevant to the question before us—whether dismissal of Sandoval's lawsuit was an appropriate sanction for his failure to pay court fees—we construe his filings broadly as we must for all *pro se* petitioners. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, we find the brief reference to the reason his payment was delayed sufficient to present an argument on appeal.

allowed him a total of 103 days to make the payment.[2]  Further, the district court had fired two warning shots, as it had twice informed Sandoval that he bore the responsibility to either make his payment or to provide specific information to show cause as to why he should receive another extension; and, in both of those orders, the district court made clear that failure to comply could result in dismissal.

We see no abuse of discretion.  Sandoval never represented to the district court that he had made a complete and proper request to make his payment.  He makes something akin to that representation on appeal, but neither his district court filings nor his appellate brief provide information about the nature and frequency of his requests or the nature of the interference.  What is more, Sandoval did not attach paperwork evidencing his requests, although he was aware that such evidence had previously persuaded the court to extend his deadline.  Thus, the district court did not abuse its discretion in determining that Sandoval had failed to show cause as to why, when there was money in his account, he was unable to make payments.

We therefore affirm the dismissal without prejudice.

---

[2]  The district court issued its first order regarding Sandoval's payment schedule on September 25, 2013.  The court originally allowed Sandoval thirty days to make that payment, but, on December 16, the court extended the deadline until January 6, 2014.

### B. Motion for Court-Appointed Counsel

Sandoval has also appealed the district court's denial of his repeated motions to appoint counsel. "We review a district court's refusal to appoint counsel for an indigent prisoner in a civil case for an abuse of discretion. . . . Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004). Unlike criminal defendants, civil claimants do not have a Sixth Amendment right to appointed counsel. *See Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1169 (10th Cir. 2003). Instead, the court's discretion to appoint counsel stems from 28 U.S.C. § 1915. When we evaluate a district court's decision to deny such a motion, we consider "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115.

In this case, the district court interpreted three of Sandoval's filings as motions to appoint counsel. In those documents, Sandoval argued he could not afford an attorney, his access to legal research materials was limited, the issues in his case were complex, he is ill-equipped to cross-examine witnesses at trial, and his tenure in prison imposes extreme hardship because of his psychological condition. The district court denied each of those motions.

-10-

As we review the district court's decision, we, like the district court, are unable to evaluate the merits of his underlying claims. Because Sandoval failed to make filing fee payments, the district court never took up the merits of this case. We have, however, already addressed the merits of his requests to extend the filing deadline and found them unpersuasive.

Thus, like the district court, we focus on Sandoval's capacity to effectively present his claims. The district court concluded, "Sandoval understands the issues in the case and appears to be representing himself in an intelligent and capable manner. Moreover, the civil rights claims presented by Sandoval are neither complex nor novel." *Sandoval v. New Mexico*, No. 13-713 at *2 (D.N.M. Nov. 1, 2013). After reviewing Sandoval's filings, we, too, find that he sufficiently described his concerns about the deficiencies in the state-court jury instructions and their relationship to his Fourteenth Amendment rights.

Although the district court denied Sandoval's motion for appointment of counsel before finally addressing his failure to comply with the order to make payments, we can conclude from the record that he understood the fee-related proceedings as well. Sandoval succeeded in securing *in forma pauperis* status, and, as evidenced by his filings, he understood the nature of his obligation to make payments thereafter.

Because none of the issues in this case were insurmountably complex and Sandoval was able to present his arguments, the district court did not abuse its discretion in denying Sandoval's motions to appoint counsel.

## III.  Conclusion

Finding that the district court did not abuse its discretion in determining that Sandoval had failed to comply with an order to make payments or that Sandoval was not entitled to court-appointed counsel, we AFFRIM the dismissal without prejudice.  Further, we remind Sandoval that he remains responsible for making payments in accordance with the district court's order until he has paid the full filing fee.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge