**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**September 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

WESTLEY YBARRA,

    Plaintiff - Appellant,

v.

ROBERT DICK, Case Manager III,
Sterling Correctional Facility; JOHN/JANE
DOE, #1, Intelligence Officer, Sterling
Correctional Facility; JOHN/JANE DOE,
#2, Associate Warden, Sterling
Correctional Facility; JOHN/JANE DOE,
#3, Warden, Sterling Correctional Facility;
JOHN/JANE DOE, #4, Intelligence
Officer, Colorado State Penitentiary;
JOHN/JANE DOE, #5, Manager III,
Colorado State Penitentiary; JACKIE
MCCALL, Associate Warden, Colorado
State Penitentiary; STEVE OWENS,
Warden, Colorado State Penitentiary; EVA
LITTLE, Lieutenant, Colorado Department
of Corrections,

    Defendants - Appellees.

No. 21-1273
(D.C. No. 1:19-CV-01828-PAB-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Westley Ybarra, proceeding pro se,[1] appeals the district court's dismissal of this 42 U.S.C. § 1983 action.  The district court found the mandatory administrative exhaustion provisions of the Prison Litigation Reform Act of 1995 (PLRA) applied and rejected Mr. Ybarra's arguments that he had no available administrative remedies.  It therefore dismissed the case because Mr. Ybarra failed to exhaust his available administrative remedies.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

Mr. Ybarra is an inmate housed by the Colorado Department of Corrections (CDOC).  Before he entered CDOC custody, Mr. Ybarra testified against a member of the 211 gang in a murder trial.  While in CDOC custody, members of the 211 gang allegedly assaulted him several times over the course of about a decade.

During this timeframe, Mr. Ybarra "submitted informal grievances to CDOC officials requesting that he be placed in protective custody and was told by CDOC personnel that there was nothing they could do."  R. at 70.  Mr. Ybarra never filed a formal grievance relating to the CDOC's failure to protect him from harm at the hands of other inmates.  *See id.* at 64–67, 70.  He brought this § 1983 action,

_____

[1] Because Mr. Ybarra proceeds pro se, we construe his filings liberally but do not serve as his advocate.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

claiming various CDOC employees violated his constitutional rights by failing to protect him from harm at the hands of other prisoners.[2]

Various defendants moved to dismiss the case because Mr. Ybarra failed to exhaust his administrative remedies. The magistrate judge converted the motion into a motion for summary judgment and recommended that it be granted. Mr. Ybarra objected to the magistrate judge's recommendation. The district court overruled Mr. Ybarra's objections and adopted the magistrate judge's recommendation in the order on appeal.

## II.  Discussion

### A.  Standard of Review

"We review the grant of summary judgment de novo . . . ." *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). "Once the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial."

---

[2] CDOC officials transferred Mr. Ybarra to protective custody before he filed this suit.

*May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (internal quotation marks omitted).  "The summary judgment standard requires us to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Est. of Beauford*, 35 F.4th at 1261.

"We also review de novo the finding that [Mr. Ybarra] failed to exhaust his administrative remedies." *May*, 929 F.3d at 1234 (internal quotation marks omitted).

## B.  Legal Background

The PLRA provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is mandatory; an inmate may not bring any action "absent exhaustion of available administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 638 (2016); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").  To exhaust administrative remedies an inmate "must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation and internal quotation marks omitted).  And "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the]

4

PLRA for failure to exhaust his administrative remedies." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

"The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 578 U.S. at 648. "Although a defendant carries the burden of proving that the plaintiff did not exhaust his administrative remedies, once the defendant has carried that burden, the onus falls on the plaintiff to show that remedies were unavailable to him." *May*, 929 F.3d at 1234 (brackets and internal quotation marks omitted). The Supreme Court considers three types of administrative remedies to be unavailable, "although [they are] officially on the books": (1) a procedure hindered by officers' inability or unwillingness to provide relief, (2) an administrative scheme "so opaque that it becomes, practically speaking, incapable of use," and (3) a remedy thwarted by prison administrators' "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

## C. Analysis

Mr. Ybarra does not dispute the district court's finding that the PLRA's exhaustion provision, 42 U.S.C. § 1997e(a), required him to exhaust his available administrative remedies before filing suit. Nor does he dispute the district court's finding that he "did not use the required grievance procedures to complain administratively about the claims he makes in this lawsuit." R. at 79. But he argues § 1997e(a) does not bar his suit because (1) the CDOC did not countenance use of the grievance system for seeking his desired remedy of a transfer to protective custody,

(2) he followed the informal procedures required to request protective custody, and (3) he should be excused from the exhaustion requirement because CDOC officials engaged in machinations designed to deceive him into believing he had no available administrative remedies.

To support his first argument, Mr. Ybarra asserts he wanted a transfer to protective custody. And he contends that because CDOC grievance procedures do not apply to transfer requests, the grievance procedures were not an applicable avenue for exhausting his claims. We reject this argument.

Each claim in the amended complaint asserted officials were "deliberately indifferent to [Mr. Ybarra's] security issues and failed to protect him from harm at the hands of other prisoners in violation of the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution." R. at 28, 30, 32–34, 37. It is undisputed that CDOC grievance procedures allowed Mr. Ybarra to "file a grievance for placing him in an unsafe living condition or failing to protect him." *Id.* at 87 (citing *id.* at 66). We therefore agree with the district court that because Mr. Ybarra's suit "allege[d] failure to protect and placement in unsafe living conditions, which are grievable issues," "the grievance procedure was available to [Mr. Ybarra] and he was required to administratively exhaust before bringing suit." *Id.* at 87–88.

This result obtains even though Mr. Ybarra could not seek his preferred remedy of transfer to protective custody through the grievance procedure. *See Booth v. Churner*, 532 U.S. 731, 734 (2001) (holding inmate had to "complete a prison administrative process that could provide some sort of relief on the complaint stated,

6

but no money," even though the inmate's suit sought only money damages); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."). "[O]ne of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 (10th Cir. 2003). Had Mr. Ybarra attempted to grieve the CDOC's alleged failure to put him in safe living conditions or protect him from an assault by the 211 gang, it is reasonable to expect that CDOC officials could have applied their professional expertise to devise a solution to the problem. *See id.* at 1167 ("[T]he fact that prison authorities did have the power to render some of the relief requested by plaintiffs puts this case squarely within the ambit of *Booth*.").

Mr. Ybarra next argues his informal requests for protective custody satisfied the exhaustion requirement. We disagree. "[E]xhaustion of administrative remedies . . . means using *all* steps that the agency holds out." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis added); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("[A]n inmate may only exhaust by properly following *all* of the steps laid out in the prison system's grievance procedure." (emphasis added)). As just discussed, the CDOC's formal grievance procedures provided Mr. Ybarra with an available avenue for seeking redress beyond seeking transfer to protective custody. *See Booth*, 532 U.S. at 736 ("[A] remedial scheme is 'available' where . . . the administrative

process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress."). And because Mr. Ybarra did not pursue that avenue, he did not exhaust his available remedies. *Cf. Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) ("When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Mr. Ybarra finally argues CDOC officials "'thwart[ed] [him] from taking advantage of [the] grievance process through machination,'" Aplt. Opening Br. at 3c (quoting *Ross*, 578 U.S. at 644). He contends the CDOC "set up [its] grievance system in such a way as to deter, or trick, inmates into believing that their issues are not grievable" so that it can use the inmates' failure to administratively exhaust claims to secure victory in any suit the inmates might bring. *Id.*

To succeed on this argument, Mr. Ybarra had to point to evidence showing "(1) the . . . machination . . . actually did deter him from lodging a grievance and (2) the . . . machination . . . would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *May*, 929 F.3d at 1235 (brackets and internal quotation marks omitted). The district court found that Mr. Ybarra failed to make the required showing on the second prong. Mr. Ybarra does not challenge this finding on appeal, so we affirm it. *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366, 1369 (10th Cir. 2015) (stating that the appellant must "explain what was wrong with the reasoning that the district court relied on in reaching its decision" and affirming

8

district court's decision where the "opening brief contain[ed] nary a word to challenge the basis of" that decision); *see also Garrett*, 425 F.3d at 840–41 (stating that even unrepresented litigants must present an argument citing the record and providing legal authority).

### III.  Conclusion

We affirm the district court's judgment.  We grant Mr. Ybarra's motion for leave to proceed on appeal without prepayment of costs and fees, but he must continue making partial payments until the entire filing fee has been paid.  *See* 28 U.S.C. § 1915(b)(1).

Entered for the Court


Veronica S. Rossman
Circuit Judge